# Richmond.

WESTERN UNION TEL. CO. V. TYLER.

NOVEMBER 16th, 1893.

TELEGRAPH COMPANIES—*Penalties—Inter-State Commerce.*—Code, § 1292, providing that every telegraph company shall deliver a telegram promptly to the person to whom it is addressed, and that for every failure to forward or deliver same as promptly as possible, the company shall forfeit $100 to the person sending it, or to the person to whom it is addressed, *held,* not a burden upon, or a regulation of, commerce, and not in conflict with any act of Congress, or with the inter-state commerce clause of the United States Constitution; and the action to enforce the forfeiture need not be in the name of the commonwealth.

Error to judgment of circuit court of Alleghany county, rendered March 29, 1892, in an action of debt for a penalty, wherein J. O. Tyler was plaintiff and the Western Union Telegraph Company was defendant. There was a verdict and judgment for the plaintiff, to which judgment the defendant company obtained a writ of error from one of the judges of this court.

*Stiles & Holladay,* for plaintiff in error.

*Benj. Haden,* for defendant in error.

LEWIS, P. delivered the opinion of the court.

This was an action against the Western Union Telegraph Company, to recover a statutory penalty of one hundred dollars for the failure of the company to deliver as promptly as

practicable a certain dispatch sent from Ashville, North Carolina, to the plaintiff, at Clifton Forge in this State. Section 1292 of the Code, under which the action was brought, reads as follows:

"It shall be the duty of every telegraph or telephone company, upon the arrival of a dispatch at the point to which it is to be transmitted by said company, to deliver it promptly to the person to whom it is addressed, where the regulations of the company require such delivery, or to forward it promptly as directed, when the same is to be forwarded. For every failure to deliver or forward a dispatch as promptly as practicable, the company shall forfeit one hundred dollars to the person sending the dispatch, or to the person to whom it was addressed."

It is admitted that the dispatch in question was not delivered as promptly as practicable, but the company, nevertheless, denies the plaintiff's right to recover, on two grounds, viz: (1) Because the action, if maintainable at all, ought to have been in the name of the commonwealth; and (2) because section 1292 of the Code is repugnant to that clause of the constitution of the United States which gives to Congress the power to regulate commerce among the several states.

As to the first point, little need be said. Section 712 of the Code provides that "where any statute imposes a fine, unless it be otherwise expressly provided, or would be inconsistent with the manifest intention of the general assembly, it shall be to the commonwealth," etc.; and by section 745 it is provided that "wherever the word 'fine' is used in this chapter it shall be construed to include a pecuniary forfeiture, penalty, and amercement." But these sections, upon which the company relies, have no application to a case like the present. Section 1292, which gives a right of action in a case of this sort, expressly provides that the forfeiture shall be "to the person sending the dispatch, or to the person to whom it was addressed;" and it would, therefore, be manifestly inconsistent

with the intention of the legislature to hold that the common-wealth has any interest in the penalty sought to be recovered in the present case, or that the action is not properly in the name of the plaintiff.

The next question, then, is whether section 1292, so far as it relates to a case like the present, is unconstitutional.

That the power of Congress to regulate commerce among the States is unlimited and supreme, is not disputed. It was so decided in the great case of *Gibbons* v. *Ogden*, 9 Wheat, 1, and the subsequent decisions to the same effect are very nume-rous. It must also be conceded that telegraphic communica-tion, like the transportation of passengers and merchandise, is commerce, and that such communication, when had between different States, is inter-state commerce. In *Telegraph Co.* v. *Texas*, 105 U. S., 460, it was distinctly decided that a telegraph company occupies the same relation to commerce as a carrier of messages that a railroad company does as a carrier of goods; that both companies are instruments of commerce; and that their business is commerce itself. See, also, *W. U. Tel. Co.* v. *Pendleton*, 122 U. S., 347; *Leloup* v. *Port of Mobile*, 127 *Id.*, 640. Nor is it denied that those subjects of commerce which are national in their nature, admitting of only one uniform system or plan of regulation, such as the transportation of commodities, or the transmission of messages, between differ-ent States, is subject to the exclusive control of Congress, and, consequently, that any regulation thereof by State legislation, whether Congress has legislated on the subject or not, is void. *Cooley* v. *Board of Port Wardens*, 12 How., 299; *Welton* v. *State of Missouri*, 91 U. S., 275; *Henderson* v. *Mayor, &c.*, 92 *Id.*, 259; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 *Id.*, 196; *Robbins* v. *Shelby Taxing District*, 120 *Id.*, 489; *Leisy* v. *Hardin*, 135 *Id.*, 100; *Lehigh Valley Railroad* v. *Pennsylvania*, 145 *Id.*, 192; *W. U. Tel. Co.* v. *Texas*, 105 *Id.*, 460; *Leloup* v. *Port of Mobile*, 127 *Id.*, 640.

These principles were acted on by this court in *N. & W. R. R.*

*Co. v. Commonwealth*, 88 Va., 95, and we do not understand them to be controverted in the present case.

But does the statute, the validity of which is here drawn in question, amount to a regulation of commerce? In *Western Union Tel. Co.* v. *Pendleton*, 122 U. S. 347, a statute of Indiana was held to be repugnant to the commerce clause of the constitution, so far as it attempted to regulate the delivery of dispatches sent from that State into other States, because, as the court said, conflicting legislation would inevitably follow with reference to telegraphic communications between different States, if each State was vested with power to control them beyond its own limits.

But that is not the question in the present case, nor does the reasoning in that case apply to this. This is an action for the failure to deliver in this State a dispatch sent from another State and deliverable here, under a statute of this State. There is no question as to the extra territorial operation of the statute, and it will be time enough to decide that question when it arises.

It has been argued with great earnestness that the statute amounts to a regulation of inter-state commerce, but we are unable to come to that conclusion. If it can be said to affect commerce at all, it does so only remotely or incidentally. It prescribes no new rule, and imposes no additional duty, and so far as the delivery of telegrams is concerned, it simply prescribes a penalty for a failure to deliver where the regulations of the company itself require such delivery. That it would be competent, moreover, for the State to afford redress through her courts, according to the common law, for the negligent failure of a telegraph company to deliver a dispatch sent from another State, is unquestionable, and if this may be done, it is equally competent for the State to seek by legislation in advance to prevent such violation of duty.

We think the case is within the principle of the decision in *Sherlock* v. *Alling*, 93 U. S., 99, namely, that "the legislation

of a State, not directed against commerce or any of its regulations, but relating to *the rights, duties, and liabilities of citizens,. and only indirectly and remotely affecting the operations of commerce,* is of obligatory force upon citizens within its territorial jurisdiction, whether on land or water, or engaged in commerce,. foreign or inter-state, or in any other pursuit."

This principle was applied and amplified in *Smith* v. *Alabama,* 124 U. S., 465, and again in *Nashville, &c., Ry. Co.* v. *Alabama,* 128 *Id.,* 96.

In the Smith case the question was whether a statute of Alabama, making it unlawful for any locomotive engineer to drive or operate any train of cars without having been first examined and licensed, was in contravention of the commercial power of Congress, so far as it applied to engineers. employed on inter-state trains; and it was held that it was not. After a full consideration of the case the conclusions announced were (1) that the statute was not in its nature a regulation of commerce; (2) that it was properly an act of legislation within the reserved power of the State to regulate the relative rights and duties of persons within the State, so as to. secure safety of persons and property; and (3) that so far as it affected inter-state commerce, it did so only indirectly, and not so as to burden or impede such commerce.

In the course of the opinion it was said, by way of illustration, that a common carrier, although engaged in inter-state commerce, is liable, according to the local laws of the particular State in which he may be guilty of any nonfeasance or misfeasance, as, for example, for *his failure to deliver goods at the proper time and place,* or for injuries to passengers caused by his negligence, and that in neither case would it be a defence that the law giving the right of redress was void as being an. unconstitutional regulation of commerce by the State.

These views were repeated in the case in 128 U. S., above cited, where a statute of Alabama, requiring the examination of certain railway employees with respect to their powers of

vision, was sustained, and held not to be a regulation of commerce. The provisions of the statute, like those of the statute upheld in the Smith case, were held to be but parts of that local law which governs the relation between carriers of passengers and merchandise and the public who employ them, which, as respects inter-state commerce, are not displaced until they come in conflict with an express enactment of Congress. And after quoting from the opinion in the Smith case, it was added that what the State may punish or afford redress for, when done, it may seek by proper precautions in advance to prevent.

In *Sherlock* v. *Alling*, *supra*, the main point was whether a state statute giving a right of action to the personal representative of a deceased person, whose death is caused by the wrongful act or omission of another, could be constitutionally applied to the case of a loss of life by a collision between steamboats navigating the Ohio river engaged in inter-state commerce. The defendant's contention was that the statute enlarged the liability of parties for such torts, and, if applied to marine torts, would constitute a new burden on commerce. But this view was rejected, and the statute was held a valid addition to and amendment of the general law of the State, which did not, within the meaning of the Constitution, place a burden on commerce, or amount to a regulation thereof. And referring to previous decisions, relied on by the defendant, it was said that the legislation adjudged invalid in those cases " created in the way of tax, license or condition, a direct burden on commerce, or in some way directly interfered with its freedom."

Tested by these principles, section 1292 of the Code is not open to the objection that has been urged against it. It is not, in a legal sense, a burden upon or a regulation of commerce, nor does it conflict with any act of Congress. It is simply, as was the legislation involved in the cases just mentioned, an amendment or enlargement of the local law, which is subject

to modification by the legislature, and which regulates the relative rights and duties of telegraph companies and persons doing business with them in this State.  It is, of course, competent for Congress, in the exercise of its plenary power in the matter, to prescribe specific regulations touching foreign or inter-state commerce, which regulations would supersede all conflicting local law which even indirectly affects such commerce.  But until some such action is taken by Congress we are obliged to hold that section 1292 is a valid enactment.

The following extract from the opinion in *Smith* v. *Alabama,* is, *mutatis mutandis,* no less applicable to this case than to that.  There it was said:

"But for the provisions on the subject found in the local law of each State, there would be no legal obligation on the part of the carrier, whether *ex contractu* or *ex delicto,* to those who employ him; or if the local law is held not to apply where the carrier is engaged in foreign or inter-state commerce, then, in the absence of laws passed by Congress or presumed to be adopted by it, there can be no rule of decision based upon rights and duties supposed to grow out of the relation of such carriers to the public or to individuals.  In other words, if the law of the particular State does not govern that relation, and prescribe the rights and duties which it implies, then there is and can be no law that does until Congress expressly supplies it, or is held by implication to have supplied it, in cases within its jurisdiction over foreign and inter-state commerce.  The failure of Congress to legislate can be construed only as an intention not to disturb what already exists, and is the mode by which it adopts, for cases within the scope of its power, the rule of the State law, which until displaced, covers the subject."

The result of these views is that the judgment complained of must be affirmed.

JUDGMENT AFFIRMED.