SEAWELL *et al.* v. THE KANSAS CITY, FT. SCOTT & MEMPHIS RAILROAD COMPANY, *Appellant.*

### Division One, December 23, 1893.

1. **Carrier, Railroad:** LONG AND SHORT HAUL: STATUTE: INTERSTATE COMMERCE. A shipper is entitled, under Revised Statutes, 1889, section 2637, 2643, to recover of a common carrier a penalty of three times the amount of damages sustained by reason of the carrier's violation of the prohibition therein against its receiving "a greater compensation in the aggregate for the transportation of like kinds of

property under similar circumstances and conditions for a shorter than a longer distance on the same line" and the fact that in course of continuous transportation from one point to another in this state the property passes the boundaries of the state does not make its transportation a matter of interstate·commerce, and thus deprive the shipper of the right under the statute to recover for the discrimination.

2. ——: ——: ——: ——. It is not essential to the shipper's recovery, under section 2637 and 2643, that he show that the shipments were actually made during the time complained of, over the longer distance, but it is sufficient if it appear that the carrier published and held out to the public that it would carry property over such longer distance at the discriminating rates.

3. ——: ——: ——: ——: ˙ EVIDENCE. The fact that the carrier did transport the property over the longer distance at the discriminating rates, before and after the times during which the complaining shipper transported over the shorter distance, is admissible in evidence to show that the latter was damaged.

4. ——: ——: ——: ——: DAMAGES. The measure of plaintiff's damages in such case is the amount which the sum charged by the carrier for the shipment over the shorter distance exceeds that charged over the longer.

5. Practice: INSTRUCTIONS: HARMLESS ERROR. Defendant can not complain of an instruction given for plaintiff as constituting reversible error because it required the jury to find more facts to authorize a verdict for the plaintiff than was necessary under the law.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*Wallace Pratt* and *I. P. Dana* for appellant.

(1) The transportation of plaintiff's coal was interstate commerce. *The Daniel Ball*, 10 Wall. 557; *Hall v. De Cuir*, 95 U. S. 485; *Lord v. Steamship Co.*, 102 U. S. 541; *Pacific Steamship Co. v. Commissioners*, 18 Fed. Rep. 10; *State ex rel. v. Railroad*, 40 Minn. 267; s. c., 41 N. W. Rep. 1047; 24 U. S. Stats. at Large, 379; *Cotton Exchange v. Railroad*, 2 Int. St. Com. Rep. 289; *Mattingly v. Penn. Co.*, *Id.* 806. (2) And therefore not

subject to regulation by state laws. *Railroad v. Illinois*, 118 U. S. 557; *Ferry Co. v. Pennsylvania*, 114 U. S. 196; *Hardy v. Railroad*, 18 Am. & Eng. R. R. Cases (Kan.) 432, and note; *Welton v. Missouri*, 91 U. S. 275. (3) And this was so in spite of the fact that the state legislature had declared such commerce subject to state laws, for such declaration was contrary to the federal constitution, and therefore void. U. S. Const. sec. 8, art. 1. *Stanley v. Railroad*, 100 Mo. 435. (4) There was no evidence that defendant gave an undue or unreasonable preference to Liberal or Minden over Carbon Center, either by a violation of section 2637 or otherwise. No coal was transported either from Liberal or Minden during the period of plaintiff's shipments from Carbon Center, nor was defendant requested to transport any, and hence defendant neither "charged" or "received" less compensation for the longer than for the shorter haul. Webster's Dictionary; Black's and Bouvier's Law Dicts., title, Charge. 5) The transportation, or the charge therefor, had there been any, from Liberal or Minden, would not have been "under similar circumstances and conditions over the same line in the same direction," as in the case of Carbon Center. *Denaby Co. v. Railroad*, L. Rep., 10 H. L. 97; *Coal Company v. Railroad*, 2 Nev. & Mac. 39; *Bus. Men's Ass'n v. Railroad*, 2 Int. St. Com. Rep. 48; *Richardson v. Railroad*, Ry. & Can. Tr. Cas. 1; 8 Am. & Eng. Encyclopædia of Law, 958. (6) The burden of showing the similar circumstances and conditions and the same line and same direction rested of plaintiffs. *Paxon v. Railroad*, 56 Iowa, 427. (7) These statutes (sections 2636 and 2637) are penal statutes, and therefore to be strictly construed in favor of defendant. Rev. Stats. 1889, sections, 2643, 2645. *State to use v. Railroad*, 19 Mo. App. 104; *Fusz v. Spaunhorst*, 67 Mo. 256; *State v. Bryant*, 90 Mo. 534. (8) There was no evi-

dence that plaintiffs sustained any damages in conse-
quence of the alleged preference given Liberal and
Minden.   This was a fact necessary to be proved before
plaintiffs could be entitled to recover.   Moreover, the
relation of cause and effect between the unlawful act
and the damage must have been proven, which plain-
tiffs failed to do.   *Harlan v. Railroad,* 65 Mo. 22;
*Powell v. Railroad,* 76 Mo. 80; *Stepp v. Railroad,* 85 Mo.
229.   (9) The court erred in the admission of evidence
over defendant's objection.   *Frederick v. Allgaier,* 88
Mo. 598; *Weil v. Posten,* 77 Mo. 284.   (10) The instruc-
tions given at plaintiff's request were erroneous and
improper.   *Stevenson v. Hancock,* 72 Mo. 612; *Price v.
Railroad,* 77 Mo. 508; *Frederick v. Allgaier,* 88 Mo.
598; *Wells v. Zalle,* 59 Mo. 509.   (11) The court erred
in refusing each of defendant's instructions 8 to 13
inclusive.   (12) The verdict was against the evidence
and was against the law as declared in the instructions
given by the court.   (13) The court erred in fixing the
amount of attorney's fee and in allowing the same.
Const., art. 2, section 28; Revised Statutes, 1889, sec-
tions, 2131, 2133; *Briggs v. Railroad,* 111 Mo. 168;
*Railroad v. Crider,* 19 S. W. Rep. (Tenn.) 618.

*Gates & Wallace* for respondents.

(1) The transportation of plaintiff's coal was not
commerce between the states, because a part of the
track over which it was carried was in the state of
Kansas.   The coal was shipped by the plaintiffs from
a point in Missouri, to the plaintiffs at another point
in Missouri and there was no commerce between any
person in Missouri with any person in the state of
Kansas. *Railroad v. Pennsylvania,* 145 U. S. 192; *Rail-
road v. Pennsylvania,* 129 Pa. St. 308; Revised Statutes,
1889, section 2656.   (2) It requires no argument to

prove that the defendant gave an unreasonable prefer-
ence and advantage to both Liberal and Minden to the
disadvantage of Carbon .Center; Liberal is twenty-one
miles and Minden twenty-six miles further from Kansas
City than Carbon Center; and notwithstanding this fact,
Carbon Center had the disadvantage of having to pay
$2 per car more on coal transported to Kansas
than did either of the other two places. This
discrimination forced all the shippers, except the plain-
tiffs at Carbon Center, to abandon the business during
the time the increased rate was in force. This was evi-.
dently giving Liberal and Minden an undue preference
over Carbon Center, and the jury, under the evidence,
so found. The question of such preference, and
whether the circumstances and conditions were the
same was submitted to the jury by the instructions of
the defendant as well as those of the plaintiffs. *Davis
v. Brown*, 67 Mo. 313; *Tetherow v. Railroad*, 98 Mo.
74; *Keen v. Schnedler*, 92 Mo. 516; *Reilly v. Railroad*,
94 Mo. 600; *Noble v. Blount*, 77 Mo. 235; *Holmes v.
Braidwood*, 82 Mo. 610; *Hazell v. Tipton*, 95 Mo. 60;
*Jennings v. Railroad*, 99 Mo. 394; *Fairbanks v. Long*,
91 Mo. 628. (3) The action of the defendant which is
complained of by the plaintiffs is also a violation of
section 2637 of the Revised Statutes prohibiting a rail-
road company from charging a greater compensation
for a shorter distance than for a longer distance
over the same line in the same direction. The
extra charge was admitted by the defendant and
whether it was over the same line in the same
direction was a question which the defendant's own
instructions submitted to the jury. See authorities
cited under point 2. (4) That the plaintiffs' instruc-
tion did not require, as a condition of recovery, that
they should have sustained damages by the unlawful
acts of the defendant was an immaterial omission in view

of the fact that the damages were patent and obvious, and the proper rule of damages was given to the jury. This omission was supplied by. the fifth instruction given for the defendant. These instructions were not contradictory, and when read together contained but one doctrine. Sackett on Instruction [2 Ed.], pp. 23, 24. *La Riviere v. La Riviere*, 97 Mo. 80; *M. Foster Mfg. Co. v. Guggemos*, 98 Mo. 391, *Bank v. Hatch*, 98 Mo. 376; *Whalen v. Railroad*, 60 Mo. 323; *Railroad v. Schoennan*, 37 Mo. App. 612; *State v. Gregory*, 30 Mo. App. 582. (5) As it appears from a decision of this court, published since this case was tried, that the attorney's fee was improperly taxed by the court instead of the jury, the plaintiffs hereby remit this item. Being merely an item of costs taxed after the verdict, it can not affect the verdict and judgment.

BRACE, J.—By article 2, chapter 42 of the Revised Statutes of 1889, it is declared to be unlawful for any common carrier "to make or give any undue or unreasonable preference or advantage to any particular person, company or firm, corporation or locality in the transportation of goods, wares and merchandise of any character, or to subject any particular person, firm, corporation or locality * * * to any undue or unreasonable prejudice or disadvantage with respect to such transportation" (sec. 2636), and "for any such common carrier to charge or receive any greater compensation in the aggregate for the transportation of like kinds of property, under similar circumstances and conditions for a shorter than a longer distance over the same line in the same direction" (sec. 2637), and it is therein further provided that "in case any such common carrier shall do or cause to be done any act or thing in this act prohibited or declared to be unlawful, or shall omit to do any act or thing

in this act required to be done, then such common carrier shall be liable to the person or persons injured thereby for three times the amount of the damages sustained in consequence of the violation of the provisions of this act, together with a reasonable attorney's fee to be fixed by the court, which fee shall be taxed and collected as part of the costs in the case'' (sec. 2643).

The defendant is a corporation operating a line of railroad between Kansas City, Missouri, and Memphis, Tennessee, through the states of Missouri, Kansas and Arkansas. The following diagram of a part of its main line and branches, is sufficient to fully illustrate the present controversy:

Plat of Part of the

KansasCity Fort Scott and Memphis Ry.

Kansas City

State line

N
W — E
S

Miami

Rich Hill

Carbon Center

Kansas

Missouri

Arcadia

Liberal

Minden

Cherryvale

Springfield

The gravamen of the plaintiff's complaint is, that during the months of April, May and part of June, 1890, the defendant company charged the plaintiff $2 more for the transportation of each of one hundred and fifty cars of coal shipped to them at Kansas City, Missouri, from Carbon Center, than it charged at the same dates for transporting coal from Liberal and Minden, all being towns in the state of Missouri, on defendant's line of railroad, and the said towns of Liberal and Minden being each at a greater distance from Kansas City than the said town of Carbon Center.

The answer in substance is a general denial and a special plea that any coal carried by defendant from Carbon Center to Kansas City, was transported over a part of its road situated in Missouri, and over a much longer portion in the state of Kansas, and the same was true of all freight carried by defendant from either Minden or Liberal to Kansas City (the distance being specified as to each place); that defendant's said lines of railroad were operated not only for the transportation of freight between said three places and Kansas City, but also between many other places on said line in the states of Missouri, Kansas and Arkansas, and that all freight transported from either of said three places to Kansas City was interstate commerce, and subject to regulation alone by congress and not subject to said provisions of the laws of Missouri, and that said provisions of the Revised Statutes of Missouri are in violation of the constitution of the United States and are unconstitutional and void.

It appeared from the evidence, that the defendant charged the plaintiff, and that he paid for transporting coal from Carbon Center, $2 per car more than during the same time were its charges for transporting coal from Liberal and Minden; that coal carried by defendant from Carbon Center to Kansas City would run

first about twenty miles in Missouri to the state line, then in Kansas about eighty-one miles, where it recrossed into Missouri and ran two miles in that state, being an aggregate distance of about one hundred and three miles.　From Liberal to Kansas City, would first run about seven miles in Missouri to the state line, then *one hundred and fifteen* miles into Kansas and then two miles in Missouri, being an aggregate distance of *one hundred and twenty-four* miles, and from Minden to Kansas City would first run five miles in Missouri, then one hundred and twenty-two miles in Kansas and then two miles in Missouri, being an aggregate distance of *one hundred and twenty-nine* miles.

On the trial, the court refused to sustain some objections of the defendant to the plaintiff's evidence, which will be noticed in the course of the opinion; and refused to sustain the defendant's demurrers to the plaintiff's evidence; the defendant offered no evidence. The issues were submitted to the jury upon two instructions for the plaintiff and seven for the defendant, and the jury returned a verdict for the plaintiff for $274; thereupon on application of plaintiff, the court trebled said amount, rendered judgment for plaintiff for $822 and costs, and taxed as part of such costs an attorney's fee of $250.　The defendant brings the case here by appeal.

I.　The first error assigned is, that the the trial court refused to nonsuit the plaintiff on the evidence. To sustain this assignment, it is necessary, and counsel for the defendant undertake, to maintain the proposition that although it be conceded that Carbon Center, Liberal and Minden are all in Missouri upon the line of defendant's railroad, that the transportation by defendant of coal from all three of these points to Kansas City, also in the state of Missouri, is in the same direction, over the same line of railroad and under similar

circumstances and conditions; that the distance from Liberal and Minden to Kansas City is greater that from Carbon Center and that the defendant charged the plaintiff, in the aggregate, more for transporting plaintiff's coal from Carbon Center than it charged from either of the other two points to said city; yet the plaintiff can not recover, although the statutes of Missouri give plaintiff a right of action for damages for such discriminative charges against him, between places on the line of defendant's road in this state, because defendant's line of road between these points being partly in the state of Kansas, and the transportation of coal between these points thereon being partly through the state of Kansas, such transportation is "commerce among the several states" within the meaning of section 8, article 1, of the constitution of the United States subject to regulation alone by congress and as to such commerce, the state statutes aforesaid are inoperative and void.

There can be no question that the foregoing legislation of Missouri is part of a system adopted in this state for the purpose and having the effect of regulating that important branch of commerce, conducted by railroads. In the same year in which it was first adopted, the congress of the United States adopted a general law regulating "commerce." The law of congress was approved February 4, 1887, and went into effect sixty days after its passage. 24 U. S. Stats. at Large, chap. 104, p. 379. This federal statute enacted for the purpose of regulating "commerce among the states" passed under the power given congress by the constitution, defines and applies the provisions of the act to such commerce when conducted by railroads on land, in the following language: "The provisions of this act shall apply to any common carrier or carriers engaged in the transportation of passengers or property

wholly by railroad   *   *   *   from one state or territory of the United States, or the District of Columbia, to any other state or territory of the United States, or the District of Columbia,   *   *   *   : *Provided*, however, that the provisions of this act shall not apply to the transportation of passengers or property, or to the receiving, delivering, storage or handling of property, wholly within one state, and not shipped to or from *   *   *   any state or territory as aforesaid.''

Within six months thereafter, the legislature of Missouri passed the law in question, approved July 5, 1887 (Laws of Mo., Ex. Sess., 1887, p. 16, sec. 3; page 17, sec. 4, and page 20, sec. 10), which seems to have been in great measure copied from sections 3, 4 and 8 of the federal act. It goes without saying that the latter was intended to regulate interstate commerce only, and the former, state or domestic commerce only. In the latter we have a general definition by congress of interstate commerce, and while the Missouri statute does not in terms undertake to define state commerce generally, it does do so so far as the instance in hand is concerned, by declaring in section 2656 of the same act (Revised Statutes, 1889), that all the provisions of that act, ''shall be held to apply to shipments made from any point within the state, to any point within the state, whether the transportation of the same shall be wholly within this state or partly within this and adjoining state or states.''

These definitions are important only for the purpose of showing the opinion of congress and of the legislature upon the question of what constitutes interstate, as distinguished from state commerce, so far as the present inquiry is concerned, for it will be conceded without argument or the citation of authorities, that the jurisdiction of each within its legitimate legislative domain, is as potent and exclusive as the other, and

these provisions are respectively adverted to, only for the reason that it is suggested that this section of the Missouri statute is in conflict with the federal statute, and that the wording of section 1 of the national statute gives support to the contention that this declaration of the legislature, trenches upon the power of congress over interstate commerce in the opinion of the national legislature as therein manifested.

We confess our inability to see any conflict or inconsistency in the terms of these two laws. By the one, congress undertakes to regulate the business of a common carrier by railroad only when engaged in the transportation of freight from one state *to* another. This is the positive enactment, and its scope is not enlarged by *the proviso*, the office of which is not to enlarge, but to limit and restrict the language of the lawmaker. Endlich on Interpretation of Statutes, sec. 184, p. 254. By the other, the legislature of Missouri does not undertake to regulate such business, but only the business of a common carrier when engaged in the transportation of freight from one to another point in Missouri, *i. e.* from a point *in one state to another point in the same state.* From this legislation by congress and the legislature, no light is shed upon the question whether the state in so doing can regulate such business, and to what extent, when the line of transportation between such points is partly within and partly without the boundaries of the state, as in the present case. For its solution, we will have to look to the constitutional provision and the construction placed upon it by the supreme court of the United States, the only tribunal that can authoritatively and finally settle it. If the declaration of the state legislature upon the subject be in contravention of the right of congress to regulate interstate commerce as construed by that court, it must necessarily be futile as to the case

in hand.   The legislation of congress has not changed the grounds upon which it must be upheld or overthrown.

In support of their proposition, counsel for appellant cite us to several decisions of the supreme court of the United States, all of which have been examined, as well as such others as seemed to bear upon the question from the great case of *Gibbons v. Ogden*, 9 Wheaton, 1, to the late case of *Railroad v. Pennsylvania*, 145 U. S. 192, inclusive, and while in the opinion of the judges, expressions may be found tending to support the defendant's position, such as are quoted in the brief of its counsel, we have found no case in which the question in this case was *in judgment; necessarily involved in the principle decided; or strictly analogous to it*, unless it be the last.   We have not time, nor would it be profitable to review these cases.   It is sufficient to say of those cited, that the cases of *Welton v. Missouri*, 91 U. S. 275, and *Railroad v. Husen*, 95 U. S. 465, are not at all analogous to the case in hand.   That *The Daniel Ball* 10 Wall. 557; *Hall v. DeCuir*, 95 U. S. 485; *Lord v. Steamship Co.*, 102 U. S. 541, and *Gloucester Ferry Co. v. Pennsylvania*, 114 U. S. 196, *in judgment*, go no further than to decide that it is not within the power of a state bordering on the ocean, the navigable lakes, or rivers of the country to regulate commerce thereon between points even within its own borders.   From the beginning, the supreme court of the United States has consistently maintained upon varied lines of reasoning, that the regulation of commerce in such waters upon which may freely float the vessels not only of the citizens of different states, but of foreign countries, is a matter of national concern, and within the exclusive jurisdiction of congress.

In the case of *Railroad v. Illinois*, 118 U. S. 557, a majority of the court held in an opinion written by

Justice MILLER that while a statute of that state which prohibíted any railroad company within that state from charging or receiving for transportation of passengers or freight of the same class, the same or a greater sum for any distance than it does for a longer distance, may include and be valid as to a transportation of goods which is begun and ended within the limits of the state, disconnected from a continuous transportation through or into other states, as for instance, from Chicago to Alton, or from Cairo to Chicago, yet such legislation is obnoxious to the constitutional provision when attempted to be applied to a continuous transportation from one state through a number of states to another state, in the case then in hand, from points in Illinois to the city of New York, even as to the distance within the limits of the state of Illinois.

In a dissenting opinion delivered by BRADLEY, J., in which WAITE, C. J., and GRAY, J., concurred, after stating the question to be whether "a state legislature has the power to regulate the charges made by the railroads of the state for transporting goods and passengers to and from places within the state, when such goods or passengers are brought from, or carried to, points without the state, and are, therefore, in the course of transportation from another state, or to another state," and the contention "that such transportation is commerce between or among different states and the power does not exist," and that the majority of the court so held, the learned judge says for himself and associates in the opinion: "We feel obliged to dissent from that opinion. We think that the state does not lose its power to regulate the charges of its own railroads in its own territory, simply because the goods or persons transported have been brought from or are destined to a point beyond the state in another state." Whatever may be thought of the relative merits of the reasoning

in the two opinions, with which we have no concern, as our course must be guided by the ruling of the majority of the court, this much must be conceded, that the distinction between the case there in hand and cognate cases such as *Munn v. Illinois*, 94 U. S. 113 and *Peik v. Railroad*, 94 U. S. 164, in both of which the opinions of the court were written by Chief Justice WAITE, and the cases of *Hall v. DeCuir*; *The Daniel Ball*; *Lord v. Steamship Co.* and *Gloucester Ferry Co. v. Pennsylvania*, *supra*, and cases of that class, is therein clearly stated by Mr. Justice BRADLEY, and concurred in by the same chief justice who wrote the opinions also in the cases of *Hall v. DeCuir* and *Lord v. Steamship Co.*, in the following language: "The distinction here taken seems to us sound, and to distinguish the present case from that of DeCuir. In the *Peik case*, and others of like character, the state regulated the charges made upon an instrument of commerce (a railroad) situated within the state and under its jurisdiction—such charges being made by virtue of the state's authority; in the *DeCuir case* it attempted, as the law operated, to regulate the manner of carrying passengers on an instrument of commerce having no fixed location, but plying on navigable waters within and without the state; in other words, it attempted to regulate interstate commerce itself, directly, in a matter in which it had no special prerogative.

This distinction is important in this inquiry only for the purpose of showing that the ruling in those cases where a state has undertaken to regulate commerce between points within its own boundaries, when conducted upon the navigable waters of the United States for which purpose such waters are "the public property of the nation, and subject to all the requisite legislation of congress" (*Gilman v. Philadelphia*, 3 Wall. 724) are not analogous to cases of transportation

between points within a state conducted by a carrier on its own road, and consequently are not in point in the case under consideration, as they were not in the *Wabash case*. The distinction between the latter case and the one in hand is evident on its face. There, it was attempted to regulate continuous transportation by rail between points in the state of Illinois and a point in the state of New York, and the court ruled that such transportation was interstate commerce; here, the state of Missouri has undertaken to regulate transportation by rail between points in the state only, and the supreme court of the United States has never held that this was interstate commerce, even where such continuous transportation was partly through the limits of another state, but to the contrary.

In *Railroad v. Pennslyvania*, 145 U. S. 192, in which the state of Pennsylvania undertook under the laws of that state to collect a tax upon the earnings of a railroad company for transportation upon its road which ran for a part of the distance in the state of New Jersey, the case was disposed of by the supreme court of Pennsylvania in a *per curiam* opinion, in which it was stated: "That the single question presented was, whether transportation from one point to another point in the same state is interstate commerce, for the reason that in the course of such transportation, the property in question passes the boundaries of the state. The same point was before us last year and we determined it in favor of the commonwealth. We adhere to the same ruling now, which will enable the cases to be reviewed by the supreme court of the United States, and our decision corrected if erroneous." 129 Pa. St. 308.

An appeal to the supreme court of the United States was taken in that and the three other cases, and the decision of the supreme court of Pennsylvania in

each sustained in an opinion delivered by Chief Justice FULLER, to which there was no dissent, in which after holding that taxation "is undoubtedly one of the forms of regulation," the question is stated and decided in language as follows:

"The tax under consideration here was determined in respect of receipts for the proportion of the transportation within the state, but the contention is that this could not be done because the transportation was an entire thing, and in its course passed through another state than that of the origin and destination of the particular freight and passengers. There was no breaking of bulk or transfer of passengers in New Jersey. The point of departure and the point of arrival were alike in Pennsylvania. The intercourse was between those points and not between any other points. Is such intercourse, consisting of continuous transportation between two points in the same state, made interstate because in its accomplishment some portion of another state may be traversed?  *  *  *
It should be remembered that the question does not arise as to the power of any other state than the state of the *termini*, nor as to taxation upon the property of the company situated elsewhere than in Pennsylvania, nor as to the regulation by Pennsylvania of the operations of this or any other company elsewhere, but it is simply whether, in the carriage of freight and passengers between two points in one state, the mere passage over the soil of another state renders that business foreign, which is domestic. We do not think such a view can be reasonably entertained, and are of opinion that this taxation is not open to constitutional objection by reason of the particular way in which Philadelphia was reached from Mauch Chunk."

It would seem that this ruling is directly in point in the present case, when it is remembered that the

question here is not as to the power of any other state than the state of the *termini*, nor as to the regulation of the operations of the defendant or any other company's road elsewhere than in Missouri, for by its terms this statute can only operate between points in the state of Missouri on the same line of railroad transporting "like kinds of property under similar circumstances and conditions." Regarding this last decision of the supreme court of the United States as decisive of the question under consideration, we deem it unnecessary to notice the other authorities cited by the counsel for appellant upon this point, further than to say that we think that the case in hand can as readily be distinguished from the cases of *State v. Railroad*, 40 Minn. 267 and *Hardy v. Railroad*, 32 Kan. 698, and cases cited, from the decision of the interstate commerce commission, as it can from those cases of which the *Wabash case* and *Lord v. Steamship*, *supra*, are representatives. The trial court committed no error in refusing the nonsuit.

II. The following are the instructions given to the jury in behalf of the plaintiffs:

"1. The court instructs the jury that if they believe from the evidence that there was shipped to the plaintiffs at the dates stated in the different counts of the plaintiffs' petition, from the town of Carbon Center, Missouri, to Kansas City, Missouri, certain cars of coal on which the defendant charged and received from the plaintiffs as compensation for carrying the same, a sum greater in the aggregate than defendant charged at the same date for the transportation of a like kind of property under similar circumstances and conditions from the town of Liberal, Missouri, or from the town of Minden, Missouri, to said Kansas City, Missouri, and that it was a longer distance over the line of the defendant's road in the same direction from said towns of Liberal and Minden to said Kansas City, Missouri, than it is from the town of

Carbon Center, and thereby gave an undue and unreasonable preference and advantage to the town of Liberal or to the town of Minden as against and to the disadvantage of the said locality of Carbon Center, then you will find for the plaintiffs.

"And the court instructs the jury that it is not necessary that any coal should have actually been shipped on the the railroad of the defendant to Kansas City from the said towns of Minden or Liberal on the dates on which plaintiffs shipped coal over the defendant's railroad from Carbon Center, but if you find from the evidence that the defendant published and held out to the public at said time, that certain rates or amounts would be claimed for the shipment of such merchandise from said points to Kansas City, Missouri, then the defendant is deemed to have charged said rate within the meaning of the law.

"2. If the jury find for the plaintiffs, they will assess their damages on each count of the plaintiffs' petition at the amount which they may believe from the evidence has been charged and received by the defendant for the shipments set out in the plaintiffs' petition over and above like kinds of property under similar circumstances and conditions from the towns of Liberal and Minden."

Sections 2637 and 2643, *supra*, gave plaintiff a right of action for any damage he may have suffered by reason of the defendant having charged and received from him a greater compensation for transporting his coal from Carbon Center to Kansas City than it charged *or* received for transporting coal under similar circumstances and conditions over the same line from Liberal or Minden. All the facts necessary to constitute plaintiff's cause of action under those sections are predicated in the first paragraph of instruction number 1—that following the wording of the petition. That the

VOL. 119—16

instruction went further, and unnecessarily required the jury to find that the defendant "thereby gave an undue and unreasonable advantage," etc., can not afford the defendant any ground of complaint. It was simply requiring the jury to find more than was absolutely necessary for them to find in order for plaintiff to recover, was an error against him, and not against the defendant. It could, in fact, do no harm to anybody. The plaintiff's right, and the defendant's liability by reason of its acts as hypothecated in the instruction and stated in the petition giving plaintiff a complete right of action under section 2637, are in no way impaired or changed by the fact that they also make a case within the terms of section 2636, stated as a deduction in the petition, and evident upon the face of the facts therein stated. The defendant might, if it had been so disposed, had this deduction stricken out of the petition as a surplusage, instead of at the trial asking and receiving an instruction upon the same theory, and as such it may be rejected in the instructions and plaintiff's cause of action remain unchanged and complete. Its introduction in the petition required no other or different evidence than that which sustained plaintiff's cause of action under section 2637.

III. It is contended for the defendant that the plaintiff cannot recover upon the facts hypothetically stated in the first paragraph of instruction number 1, unless it also appear that during the time plaintiff's coal was being transported from Carbon Center, coal was also actually being transported from the town of Liberal or Minden, and therefore that the second paragraph of that instruction is wrong. The statute says "It shall be unlawful to charge or receive any greater compensation," etc., and it is argued that unless the company was actually transporting coal from Minden and Liberal to Kansas City at rates discriminating

against Carbon Center, during the time it was transporting plaintiff's coal from the latter place, the plaintiff could receive no damage from such discrimination and the company could not have made any such discriminative charges as to him. This objection seems to us only plausible.

It will be observed that the discrimination prohibited is in either charging *or* receiving, and it is between localities, not persons; persons may be the sufferers and entitled to damages for the unlawful act, but the unlawful act consists in discriminating against the locality. Now, the undisputed evidence is, that before, during the time, and after, plaintiff's coal was being shipped, the rates discriminating against Carbon Center were published and held out to the world as the rates at which coal would be transported by the company to Kansas City, and that whenever coal was shipped from those points, it was shipped at those rates. This evidence established the unlawful act discriminating against the locality. The plaintiff failed to prove actual shipments from either Liberal or Minden, during the months in which his coal was being transported, but did prove actual shipments from one or both of those points before and afterwards. This tended to show that he was damaged. For his damage would be the same in having to compete in his own market with coal received from these points at reduced rates, whether it got there before, at the time, or soon after, his coal reached there. If this view be correct, then the court committed no error in overruling the objections to this evidence and in giving the second paragraph of said instruction, and we so hold. Instruction number 1 is further criticised because the question of damage is omitted therefrom. This branch of the subject was fully covered, however, in the next instruction and in number 5 for defendant. Of the latter, defendant

of course does not complain, and if the former is correct, there will have been no error found in either of plaintiff's instructions, calling for a reversal of the judgment.

IV. The question whether the transportation of coal by defendant from Liberal, Minden and Carbon Center to Kansas City, Missouri, was upon the same line, in the same direction and under similar circumstances and conditions, was a question for the jury, as well as whether the defendant's charges for such transportation were greater for the shorter haul from Carbon Center than for the longer haul from Liberal and Minden. These questions were submitted to the jury on proper instructions, and all found for the plaintiff. There was no question but that the amount of the excessive charge was $2 per car, and they so found and assessed the plaintiff's damages accordingly as they were required to do by the second instruction. Was this measure of damages correct? In *Railroad v. Goodrige*, 149 U. S. 680, under an act of the legislature of Colorado of the same nature as the Missouri act and the Interstate Commerce act, where it was shown by the plaintiff's evidence that another shipper of coal similarly circumstanced as to place and distance with the plaintiffs, had been receiving from the defendant railroad company a rebate upon all coal transported, which was not allowed to them, it was held "that the damages sustained by the plaintiffs" should be measured "by the amount of such rebate" and that "the question whether they lost profits upon the sale of their coal by reason of the nonallowance of such rebate, was too remote to be made an element of damages. They were entitled to the same terms which the Marshall company would have received, and damages to the exact extent to which the Marshall company was given a preference."

The plaintiffs here, under the facts as found by the jury, were entitled to at least as good rates from Carbon Center as was given to shippers from Liberal and Minden, and in the absence of any evidence to the contrary, why should not his damages be measured by the exact extent to which shippers from the latter points were given a preference? We can not see any other practical standard by which his damages could be measured or that this instruction was erroneous. If our view of the law of this case be correct, the case was properly one for a jury; was fairly submitted to them by proper instructions on legal evidence, and there is no reason why the verdict should be set aside. This brings us to the judgment.

V. Under the law, the court trebled the damages found by the jury and rendered judgment therefor, took evidence as to the value of attorney's services in the case, assessed the value of such services at $250, taxed the same as costs and rendered judgment for that amount also.

Exception is taken to the action of the court in assessing the attorney's fee, but as plaintiff concedes error in this respect, and remits that amount of the judgment in this court, this question need not be considered. Such remittitur will be entered and the judgment affirmed, and the costs of this court taxed against the respondent. All concur, except BARCLAY, J., absent.