## Wytheville.

### WESTERN UNION TELEGRAPH COMPANY v. HUGHES.

June 22, 1905.

1. TELEGRAPH COMPANIES—*Interstate Commerce—Domestic Messages—Police Power.*—The doctrine announced in *Western Union Tel. Co. v. Reynolds,* 100 Va. 459, that where the initial and terminal points of a telegram are both in this State, and it is transmitted over the wires of the same company, and concerns only citizens of this State, the message is a domestic one, and its character as such is not affected by the circumstance that the line passes in part over the territory of another State, or that the company has established a relay office in such other State, at which the message is lost, is reaffirmed. There is involved the exercise of an important police power of the State which ought not to be surrendered unless declared unconstitutional by the Supreme Court of the United States. *Keith,* P., and *Cardwell, J.,* dissenting.

Error to a judgment of the Corporation Court of the city of Danville in an action of *debt.* Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Addison L. Holladay* and *James P. Harrison,* for the plaintiff in error.

*Thomas Hamlin,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

The facts in this case are essentially the same as in the case of *Western Union Telegraph Company* v. *Reynolds,* 100 Va. 459, 41 S. E. 856, 93 Am. St. 971, where the court sustained a judgment against the company for the statutory penalty, for failure to transmit and deliver a telegram, the initial and terminal points of which were both within the State of Virginia, notwithstanding the circumstance that the line passed in part over the territory of another State.

It is insisted, however, by counsel for plaintiff in error that this doctrine has been overruled by the decision of the Supreme Court of the United States in the more recent case of *Hanley* v. *Kansas City So. R. Co.,* 187 U. S. 617, 23 Sup. Ct. 214, 47 L. Ed. 333.

We cannot assent to that contention. In the last named case the court merely decided that the Railroad Commission of the State of Arkansas could not, without violating the commerce clause of the Federal Constitution, fix and enforce rates for the continuous transportation of freight between two points in the State of Arkansas, where a large part of the route is outside of the State through the Indian Territory, or Texas. The distinction between that case and the case at bar is obvious. In the latter there is no attempt to fix and enforce rates for the transmission of telegrams, but the court simply upheld the recovery of a penalty imposed by the statute upon a telegraph company doing business in the State for failure to transmit faithfully and impartially, and as promptly as practicable, a telegram, in accordance with its contract. This principle was distinctly recognized and sustained by the Supreme Court of the United States in construing a similar statute of the State of Georgia, in the case of *Western Union Telegraph Co.* v. *James,* 162 U. S. 650, 16 Sup. Ct. 934, 40 L. Ed. 1105, the authority of which is in no wise impaired by the case referred to.

It is true that this court, in the Reynolds case, cited and relied on *Lehigh Valley R. Co.* v. *Pennsylvania,* 145 U. S. 192,

12 Sup. Ct. 806, 36 L. Ed. 672, as analogous authority. But it will be observed that that case, like the case of *Hanley* v. *Kansas City So. R. Co.,* involved the power of a State to fix the rate of taxation upon the receipts of a railway company "for the mileage within the State, from transportation by continuous carriage from a point in the State, but over a line which, in its course between these points, passed out of the State into another State and back again into the State." It was that doctrine, and not the principle of the *James* case that has been modified by the recent decision of the Supreme Court of the United States.

The case in judgment, in our opinion, involves the exercise of an important police power of the State, a power which ought not to be surrendered, and which we are unwilling to surrender, in the absence of a direct and authoritative declaration on the part of the Supreme Court of the United States that it is violative of the Federal Constitution.

For these reasons the court will adhere to its former decision, and dismiss the case for want of jurisdiction.

Cardwell, J., dissenting:

I am unable to concur in the opinion of the court in this case. The case, upon the agreed state of facts, is, as the opinion states, in all essential features the same as that of *W. U. Tel. Co.* v. *Reynolds,* 100 Va. 469, 41 S. E. 856, 93 Am. St. 971, decided June 19, 1902. In each case the action was to recover against the defendant the penalty of one hundred dollars, imposed by sections 1291 and 1292 of the Code of Va. for the failure to transmit and deliver dispatches in the manner and time set forth in those sections. In the former case the message was received by the telegraph company at Radford, Va., while in the present it was received at Danville, Va.; the first was addressed to the sendee at Tom's Creek, Va., and the second to a

sendee at Pocahontas, Va., and both were lost at Bluefield, W. Va., where the telegraph company has a relay office, the only route by which the message in either case could be transmitted to its point of destination being *via* Bluefield, W. Va.

That it is settled law that a telegraph line is an instrument of commerce, and that telegraph companies, like railroad companies, are subject to the regulating power of Congress in respect to their foreign and interstate business, see *Postal Tel.-Cable Co.* v. *Umstadter,* 103 Va. 742, 50 S. E. 259, and authorities there cited.

This court having in *W. U. Tel. Co.* v. *Tyler,* 90 Va. 297, 18 S. E. 280, 44 Am. St. 910, and *W. U. Tel. Co.* v. *Bright,* 90 Va. 778, 20 S. E. 146, held that section 1292 of the Code, as applied to a case where the telegram in question was a domestic message, was not in conflict with the Constitution of the United States, or any act of Congress passed in pursuance thereof; and construing, as have the courts of other States, the decision of the Supreme Court of the United States in *Lehigh Valley R. Co.* v. *Penna.,* 145 U. S. 192, 12 Sup. Ct. 806, 36 L. Ed. 672, as authority for the proposition that where both the point at which a telegram is received for transmission and the point to which it is addressed are in the same State, although the line over which the transmission is made passes into another State between the points, the penalty prescribed by the statute may be imposed for the default of the telegraph company occurring in the foreign State, as a reasonable exercise of the police power of the State and not an attempt to regulate commerce violative of the Federal Constitution, the telegram being regarded as a domestic message, dismissed the case of *W. U. Tel. Co.* v. *Reynolds, supra,* the amount involved not being large enough to give jurisdiction to the court.

The opinion by Whittle, J., after stating that the State of Pennsylvania levied a tax on the gross receipts of all railroad companies derived from the transportation by continuous carriage from points in Pennsylvania to other points in the same

State, that is to say, passing out of Pennsylvania into another State and back again into Pennsylvania, in the course of transportation, and that the Lehigh Valley R. Co. had no road of its own from Mauch Chunk, Pa., to Philadelphia, but in transporting its coal, and general freight traffic, it used its own line from Mauch Chunk to Phillipsburg, N. J., from which point it was, under an arrangement for a continuous passage with the Pennsylvania R. Co., transported by the latter road *via* Trenton to Philadelphia, and that it was insisted that the State could not tax that part of the gross receipts derived from so much of the transportation as was wholly within the State of Pennsylvania, because the freight, during its entire transportation, was impressed with the character of interstate commerce, quotes from the opinion in *Lehigh Valley R. Co.* v. *Pennsylvania, supra,* as follows: "Commerce undoubtedly is traffic, but it is something more. It is intercourse. It describes the commercial intercourse between nations, and parts of nations, in all its branches, and is regulated by prescribing rules for carrying on that intercourse. . . . (*Gibbons* v. *Ogden,* 22 U. S., 9 Wheat. 189, 6 L. Ed. 23.) . . . The point of departure and the point of arrival were alike in Pennsylvania. The intercourse was between those points and not between any other points. Is such intercourse, consisting of continuous transportation between two points in the same State, made interstate because in its accomplishment some portion of another State may be traversed? Is the transmission of freight or messages between two places in the same State made interstate business by the deviation of the railroad or telegraph onto the soil of another State? . . . It is simply whether in the carriage of freight and passengers between two points in the same State, the mere passage over the soil of another State renders that business foreign which is domestic. We do not think such a view can be reasonably entertained, and are of opinion that this taxation is not open to constitutional objection by reason of the particular way in which Philadelphia was reached from Mauch Chunk. . . . We

will observe, however, that we think that the principle laid down by that (the trial) court is peculiarly adapted to cases like the present, in which there is such an exceptional facility for the evasion of State authority to fix the rate of charges. This may be done in an instant and without expense, by so adjusting the wires that messages must go through a part of the territory of another State."

In the more recent case, however, *Henley* v. *Kansas City So. R. Co.,* 187 U. S. 617, 23 Sup. Ct. 214, 47 L. Ed. 333, the Supreme Court of the United States gave its own interpretation of the opinion in *Lehigh Valley R. Co.* v. *Pennsylvania, supra,* and held that the railroad commission of Arkansas could not, without violating the commerce clause of the Federal Constitution, fix and enforce rates for the continuous transportation of goods between two points within the State of Arkansas, where a large part of the route is outside of the State, through the Indian Territory, or Texas. The opinion, by Mr. Justice Holmes, says: "It is decided that navigation on the high seas between ports of the same State is subject to regulation by Congress (*Lord* v. *Goodall, N. & P. S. S. Co.,* 102 U. S. 541, 26 L. Ed. 224), and is not subject to regulation by the State (*Pac. Coast S. S. Co.* v. *R. R. Com'rs,* 9 Sawy. 253, 18 Fed. 10) ; and, although it is argued that these decisions are not conclusive, the reason given by Mr. Justice Field for his decision in the last cited case disposes equally of the case at bar. 'To bring the transportation within the control of the State, as part of its domestic commerce, the subject transported must be within the entire voyage under the exclusive jurisdiction of the State.' 9 Sawy. 258, 18 Fed. 10." A number of other decisions are also cited as being in point.

The court having, in *Hanley* v. *Kansas City So. Ry. Co.,* *supra,* held that the transportation of goods on a through bill of lading from Fort Smith, Arkansas, to Grannis, Arkansas, over a line of railroad by way of Spiro, in the Indian Territory, a total distance of one hundred and sixteen miles, of which

fifty-two miles is in Arkansas and sixty-four in the Indian Territory, is interstate commerce, subject to regulation by act of Congress only, the controlling question in the case at bar is, does the doctrine apply with equal force to a telegraphic dispatch to be transmitted from Danville, Va., to Pocahontas, Va., by way of Bluefield, W. Va., that being "the only possible and proper one from Danville, Va., to Pocahontas, Va., that is, by way of Bluefield, West Va.," and the default of the Telegraph Co. in transmitting and delivering the dispatch occurring wholly within the State of West Virginia.

As we have seen, it is settled law that a telegraph company occupies the same relation to commerce as a carrier of messages that a railroad company does as a carrier of goods, both companies being regarded as instruments of commerce, and their business commerce itself. While they do their transportation in different ways, and their liabilities are in some respects different, they are both regarded as indispensable to those engaged to any extent in commercial pursuits. *Telegraph Co.* v. *Texas,* 105 U. S. 460, 26 L. Ed. 1067, and *W. U. Tel. Co.* v. *Pendleton,* 122 U. S. 356, 7 Sup. Ct. 1126, 30 L. Ed. 1187.

The opinion in *Hanley* v. *Kansas City So. Ry. Co., supra,* approving the language employed by Mr. Justice Field I have quoted above and citing a number of cases regarded as in point, proceeds as follows: "There are some later State decisions contrary to those last cited. *Campbell* v. *Chicago, Milwaukee & St. Paul Ry. Co.,* 86 Ia. 587, 53 N. W. 351; *Seawell* v. *Kansas City, Fort Scott & Memphis Rd. Co.,* 119 Mo. 222, 24 S. W. 1102; *Railroad Commissioners* v. *Western Union Tel. Co.,* 113 N. C. 213, 18 S. E. 389, 22 L. R. A. 570. But these decisions were made simply out of deference to conclusions drawn from *Lehigh Valley Railroad Co.* v. *Pennsylvania,* 145 U. S. 192, 12 Sup. Ct. 806, 36 L. Ed. 672, and we are of opinion that they carry their conclusions too far. . . . ."

One of the cases disapproved in *Hanley* v. *Kansas C., &c., Co., supra,* is *Campbell* v. *Chicago, &c., Ry. Co., supra,* holding that "an act of the Legislature, providing that regulations fixing max-

imum rates of freight that may be charged by railroad companies for the transportation of property between points within the State of Iowa should be applicable whether such transportation shall be wholly within this State or partly within this State and an adjoining State or States, is not in conflict with sec. 8 of art. I., of the U. S. Constitution as being a regulation of commerce."

Another is *Railroad Com'rs v. W. U. Tel. Co.,* 113 N. C. 213, *supra,* (cited in *W. U. Tel. Co. v. Reynolds, supra*), where it was held that telegraph messages transmitted by a company from and to points in the State, although traversing another State in the route, do not constitute interstate commerce and are subject to the tariff regulations of the commission.

While the court, in *Hanley v. Kansas C., &c., Co., supra,* referring to the case of *Lehigh Valley, &c., Co. v. Pennsylvania, supra,* says, "that was the case of a tax, and was distinguished expressly from an attempt by a State directly to regulate the transportation while outside its borders," thus recognizing the distinction indicated in *Pac. Coast S. S. Co. v. Rd. Com'rs, supra,* the only reasonable conclusion to be drawn from the opinion, as it apears to me, is, that the doctrine there announced has full and complete application to the transmission of a telegraphic dispatch from one point in a State to another point in the same State, traversing another State in its route, where the default in transmitting and delivering the dispatch occurred wholly within the foreign State.

Unlike the case of *W. U. Tel. Co. v. James,* 162 U. S. 650, *supra,* where the default of the telegraph company occurred wholly in the State of Georgia, and that of *Postal Tel.-Cable Co. v. Umstadter, supra,* where the default took place in this State, the meaning of the certificate of facts in the case at bar is that the message was delivered to plaintiff in error at Danville, Va., to be transmitted to Pocahontas, Va., and could not be transmitted from its point of origin to its point of destination without passing through the territorial limits of the State of

West Virginia; that the message was transmitted by plaintiff in error from Danville, Va., to Richmond, Va., and from Richmond to Bluefield, W. Va., and that it was received at Bluefield where it was last heard from; it thus appearing that the default of plaintiff in error, for which the penalty prescribed by the statute is imposed in this case, occurred wholly within the State of West Virginia.

I am of opinion that upon this state of facts this court is bound by the decision of the Supreme Court of the United States in *Hanley* v. *Kansas City, &c. Co., supra,* to hold that the statute, in so far as it authorizes the imposition of the penalty in such a case, transcends the police power of the State, and violates sec. 8, art. I., of the Constitution of the United States.

KEITH, P., concurs in the opinion of Cardwell, J.

*Affirmed.*