## PACIFIC COAST STEAM-SHIP CO. *v.* BOARD OF RAILROAD COM'RS.

*(Circuit Court, D. California.   September 17, 1883.)*

INTERSTATE COMMERCE—POWER OF THE STATE TO REGULATE.

> The state board of railroad commissioners has no power to regulate or inter-
> fere with the transportation of persons or merchandise, by a steam-ship com-
> pany, between ports within the state, if they be in transit to or from other
> states, or when in navigating the ocean the vessel goes beyond a marine league
> from the shore.   This power has been conferred upon congress, and is ex-
> clusive.

In Equity.

*Joseph P. Hoge* and *John J. Roche,* for plaintiff.

*N. P. Chipman,* for defendants.

Before FIELD, Circuit Justice, and SAWYER, Circuit Judge.

FIELD, Justice.   The plaintiff is a corporation formed under the
laws of California for the transaction of the business of a steam-ship
company on the Pacific coast, and in its bays and harbors, and on the
Pacific ocean.   It is the owner of a large number of steam-ships en-
gaged in the coasting trade, making voyages from San Francisco, in
California, to Astoria and Portland, in Oregon; to ports on Puget
sound, in Washington territory, and to ports in British Columbia,
and from San Francisco to San Diego, in California, touching at in-
termediate ports on the coast.

All the steam-ships in making their voyages navigate the Pacific
ocean more than a marine league from the shore.   They carry goods
sent from Europe, Asia, and states east of the Rocky mountains, upon
through bills of lading via San Francisco.   Some of the goods are
transferred to the vessels in the original packages, and some after
the packages have been opened.   Passengers, with and without
through tickets from other states and from Europe, are carried on the
steam-ships north and south from San Francisco.   Passengers and
freight are also carried in these vessels from ports in California to
other ports in the state.   All the vessels are enrolled and licensed to
carry on the coasting trade under the acts of congress.

By the constitution of California, adopted in 1879, all railroad,
canal, and other transportation companies are declared to be common
carriers and subject to legislative control.   Provision is also made for
the election of three persons called railroad commissioners, whose
duty it is to establish rates of charges for transportation of passen-
gers and freight by such companies, and publish the same from time
to time; to examine their books, records, and papers; to hear and
determine complaints against them; to punish for contempt of the
orders and processes of the commissioners, and enforce their decis-
ions; and to provide a uniform system of accounts to be kept by
the companies.

The complaint in this case is that the defendants, the commis-

sioners, elected under the constitution, intend and threaten to establish rates of charges for passengers and freights on the steam-ships of the plaintiff engaged in the coasting trade as mentioned, and exercise with respect to them all the other powers there conferred; and the plaintiff prays that they may be restrained in that respect. This suit was commenced when the late commissioners were in office, but as it is against the board as an official body, and not the members personally, it has been resubmitted for decision within the past month.

The defendants admit that it is their purpose to carry into execution the powers with which they are invested, and to establish rates of charges for passengers and freight upon the steam-ships, so far as relates to transportation between ports within the state, but disclaim all intention to regulate or interfere with the transportation of persons or freight from ports within the state to ports without it, or from ports without it to ports within it.

The question is, can they regulate or interfere with the transportation of persons or merchandise between ports within the state, if they be in transit to or from other states, or the transportation involves a voyage upon the ocean? The question in one of its aspects is new, but in neither of them is it difficult to solve. The constitution vests in congress the power to regulate commerce with foreign nations and among the several states. The power to regulate is the power to govern; to prescribe the rules by which commerce shall be conducted; to declare when it shall be burdened with conditions, and when it shall be free and untrammeled.

Commerce, as has often been said, is a term of large import. It includes the carriage of persons, and the transportation, purchase, sale, and exchange of commodities between citizens or subjects of other countries and our people, and between the people of different states. It embraces navigation, and extends to all the instruments used in navigating inland waters and the ocean.

It was at one time a subject of much discussion and some disagreement among judges whether the power conferred upon congress to regulate commerce is exclusive in its character, or concurrent with that of the states. By recent decisions this question has been put at rest. When the subject upon which congress can act under this power is national in its character, and admits and requires uniformity of regulation, affecting alike all the states, then the power is in its nature exclusive; but when the subject upon which the power is to act is local in its operation, then the power of the state is so far concurrent that its action is permissible until congress interferes and takes control of the subject. Of the former class, is all that portion of commerce with foreign countries and among the states which consists in the carriage of persons and the transportation, purchase, sale, and exchange of commodities. From necessity, there can be but one rule in such cases for all the states; and the only power competent to

prescribe a uniform rule is one which can act for the whole country. Its non-action in such cases is, therefore, equivalent to a declaration that such commerce shall be free from state interference. "There would otherwise be," as said in *County of Mobile* v. *Kimball*, "no security against conflicting regulations of different states, each discriminating in favor of its own products and citizens, and against the products and citizens of other states. But it is a matter of public history that the object of vesting in congress the power to regulate commerce with foreign nations and among the states, was to insure uniformity of regulation against conflicting and discriminating state legislation." 102 U. S. 697. See, also, *Cooley* v. *Board of Wardens of the Port of Philadelphia,* 12 How. 299; *Gilman* v. *Philadelphia,* 3 Wall. 713; *Welton* v. *State,* 91 U. S. 275.

Of the second class, are all those subjects which can be best regulated by local authority, such as harbor pilotage, and the placing of buoys and beacons to guide ships to the proper channel in entering bays and harbors. Action by the states upon such subjects is not deemed any encroachment upon the power of the general government; but when congress acts with respect to them, the authority of the state is superseded.

It follows, from these views, that, with respect to all interstate or foreign commerce, the railroad commissioners have no authority to interfere. Congress has prescribed all the regulations which are permissible, so far as that commerce is carried on in vessels. Those regulations, it is true, are principally designed to insure safety in the navigation of the vessels, and the protection and health of their officers and crews. Congress has not attempted to prescribe what charges may be made for the carriage of persons and merchandise in vessels; considering, perhaps, that they were more likely to be regulated upon just and equitable principles by competition than by legislation. Whatever the reason, congress has not seen fit to act upon that subject.

With respect to purely domestic commerce carried on by these vessels, the commissioners possess all the authority which the state can confer. But when can the vessels, in carrying persons and merchandise between different ports in the state, be held to be engaged in commerce purely domestic? for there is a commerce within the state which does not come within that designation. We answer that they are not so engaged when they take up persons or merchandise to carry to a destination within the state from a place without it, or they take up persons or merchandise in the state to carry to a place without its limits. This is the purport of the decision of the supreme court in the case of *The Daniel Ball,* 10 Wall. 557. That vessel was engaged in shipping and transporting down Grand river, in Michigan, goods destined and marked for other states than Michigan, and in receiving and transporting up the river goods brought within the state from without its limits. But as her agency in the

transportation was entirely within the limits of the state, and she did not run in connection with or in continuation of any line of vessels or railway leading to other states, it was contended that she was engaged entirely in domestic commerce. But the court answered that the conclusion did not follow, and said that,—

"So far as she was employed in transporting goods destined for other states, or goods brought from without the limits of Michigan and destined to places within that state, she was engaged in commerce between the states; and, however limited that commerce may have been, she was, so far as it went, subject to the legislation of congress. She was employed as an instrument of that commerce; for whenever a commodity has begun to move as an article of trade from one state to another, commerce in that commodity between the states has commenced. The fact that several different and independent agencies are employed in transporting the commodity, some acting entirely in one state and some acting through two or more states, does in no respect affect the character of the transaction. To the extent in which each agency acts in that transportation, it is subject to the regulation of congress." 10 Wall. 557, 565.

Nor are the vessels engaged in purely domestic commerce when their voyages between ports of the same state require them to navigate the ocean. When they go beyond the marine league they pass out of the jurisdiction of the state, and come under the exclusive control of congress. To bring the transportation within the control of the state, as part of its domestic commerce, the subject transported must be within the entire voyage under the exclusive jurisdiction of the state. *Lord* v. *Steam-ship Co.* 102 U. S. 541.

If the steam-ships of the plaintiff carried any persons or merchandise between ports of the state, not going out, on their voyage between those ports, of the jurisdiction of the state, and the persons or merchandise carried not coming from any other state or a foreign country, or going to another state or country, the transportation commencing and ending in the state, then to that extent they would be engaged in commerce purely domestic, and to that extent the railroad commissioners might have jurisdiction to regulate the fares and freights for transportation on the vessels. But it is conceded by the pleadings that in every voyage made by the vessels between ports of the state,—that is, between San Francisco and such ports along the coast,—they pass out upon the ocean beyond a marine league from the shore. They are, therefore, engaged in no transportation which the commissioners can regulate.

We have had some doubt as to our jurisdiction in this case, but as the commissioners have raised no objection on that ground, and seem anxious to have an adjudication as to the extent of their authority, we have not deemed it expedient to refuse a consideration of the questions submitted. Without some adjudication upon them, the plaintiff would be placed in great embarrassment. If the commissioners have the authority claimed, the company would be liable to a fine of $20,000 for every instance of disregard of their regulations, and

each of its officers would be liable to be punished by fine and imprisonment.

Let a decree be entered for the plaintiff, as prayed in the bill.

See *Memphis & L. R. R. Co.* v. *Nolan*, 14 FED. REP. 532, and note, 534.