## *Ex parte* KOEHLER, Receiver, etc.

*(Circuit Court, D. Oregon.    October 8, 1885.)*

1. DISCRIMINATION BY RAILWAY CORPORATION.
    Notwithstanding the Hoult act, a railway corporation may charge less for a long haul than a short one in the same direction, when the rate for the long haul is caused by other lines of transportation competing for business at the point from whence the long haul is made; and where the road of such corporation forms a part of a line of transportation consisting largely of water car-

[1] See, also, *Rumsey* v. *Town*, 20 Fed. Rep. 558.

riage between two principal points, the rate may be made so as to enable it to compete with another road that constitutes a part of another line of water and railway transportation between the same points.

2. PROVISO TO SECTION 2 OF THE HOULT ACT.
   Under this proviso, which excepts from the operation of the act "goods intended in good faith to be shipped to points beyond the limits of the state," wheat intended by the shipper to be sent directly to San Francisco, or other points beyond the limits of the state, via Portland, may be carried on the O. & C. road from Corvallis to the latter place without reference to said act.

Petition for Instruction under the Hoult Act.

*John W. Whalley*, for the receiver.

*Wallis Nash*, for the Oregon Pacific Ry. Co.

DEADY, J.   By section 4 of the act of February 20, 1885, it is declared unlawful for any person engaged in the transportation of property by railway in this state to charge or receive any greater compensation for a short haul than a longer one in the same direction. Sess. Laws, 39. On April 23d, Mr. Koehler, the receiver of the road of the Oregon & California Railway Company, presented a petition to this court asking for instructions concerning his right and duty, as such receiver, under the provisions of said act, whereupon said receiver was instructed, among other things, as follows:

"To charge no more for the transportation of goods than the maximum allowed by the act, nor no more for a short haul than a long one in the same direction, except to and from points where the rate obtainable is affected by water transportation, in which case he may carry at as low a rate as the watercraft do, without reference to the length of the haul." *Ex parte Koehler*, 23 Fed. Rep. 529.

And now said receiver asks for further instructions under said section 4 on a state of facts which have arisen since that date. From the present petition it appears that the Oregon Pacific Railway Company has lately completed a road from Yaquina bay to Corvallis, and is now engaged in the transportation of freight and passengers thereon between said points; that in connection therewith an ocean steamer is run between Yaquina bay and San Francisco, "thus forming a line of transportation from Corvallis, in the center of the Wallamet valley, to San Francisco," making Corvallis a competing point for railway and ocean transportation of goods exported from or imported into the state; and that this fact necessarily affects the rate of transportation obtainable at other points capable of being reached by water-craft from Corvallis.

By leave of the court, the counsel for the Oregon Pacific was heard on the petition in opposition to counsel for the receiver.

It does not appear as distinctly from the petition as it should, but it was admitted on the argument by counsel, that the Oregon Pacific is carrying wheat from Corvallis to Yaquina bay, a distance of 72 miles, for $2.60 per ton, from whence it is carried by steamer to San Francisco for $1.90 per ton, or $4.50 over the whole route; while the receiver is carrying it on the road of the Oregon & California Company, from Corvallis to Portland, a distance of 98 miles, for $3.20 a

ton, from whence it is carried by steamer to San Francisco for $2.50 per ton, or $5.70 over the whole route. From this it appears that there is in fact a competition between these two roads, at Corvallis, for the transportation of Oregon wheat destined to San Francisco; the one being an important part of the route via Yaquina bay, and the other via the Columbia river. The ocean and railway transportation via Yaquina bay appear to be under one management, and are probably one in interest. The water transportation via the Columbia river route is merely a connecting link with the Oregon & California road, and the management and ownership of each is separate and distinct from that of the other. It follows that the managers of the Yaquina bay route, by making a rate to San Francisco less than the one by the Columbia river, whether the reduction be on the railway or ocean part of such route, or both, may prevent the Oregon & California road from carrying any wheat from Corvallis that is destined to San Francisco, unless the latter is allowed to compete for the same by making a rate between Corvallis and Portland which will at least equalize the cost of transportation by the two routes. Of course the Oregon Pacific has no right to object to this, and the public, who are interested in or dependent upon Corvallis as a shipping point for the export of wheat, cannot be injured by it, but may be benefited.

The only objection that can be made to this reduction of rate from Corvallis to Portland is that it would be in conflict with the provision of the "Hoult act" concerning short and long hauls, unless the rate is correspondingly reduced at all points between these two places, which is not intended. In *Ex parte Koehler, supra*, I held that while the state had "the power to prevent a railway from discriminating between persons and places, for the sake of putting one up and another down, or for any reason other than the real exigencies of its business," it could not prevent discrimination between places, when it is the result of competition with other lines or means of transportation, and practically thereby deprive a railway company of the right to do business, and render its property comparatively valueless. This ruling governs this case. The Oregon Pacific, by means of its connection with the ocean steamer between Yaquina and San Francisco, is competing at Corvallis with the Oregon and California road for the carrying of wheat to San Francisco, and the receiver of the latter must be allowed to make a rate between Corvallis and Portland that will enable it to secure what it can of the business.

The receiver also asks for instructions under the proviso in section 2 of the act which reads as follows: "The provisions of this act shall not apply to goods intended in good faith to be shipped to points beyond the limits of this state." At the passage of this act there was no railway running out of the state except that of the Oregon Railway & Navigation Company. And such is still the case. The only reason on which the proviso could have been adopted is that in the carriage of goods out of and beyond the state no injury or inconven-

ience can result to places within it, by reason of a less rate for a long haul than a short one in the same direction. Besides, the transportation of goods to a point without the state is interstate commerce, and beyond the power of the state to regulate. And it can make no difference in principle or result that the goods so shipped are carried over different lines of transportation within the state before passing beyond its limits. It is the intent or purpose of the shipper concerning the destination of the goods at the time of shipment that determines the question whether they are within the exception or not. Whether the road upon which they are first placed is an interstate one or not is immaterial. Any road which leads beyond the limits of the state, or forms a link in a line of extra-state transportation, upon which goods are shipped with intent to transport them beyond the limits of the state, is so far exempt by the proviso from the operation of the act. *Pacific Coast S. S. Co.* v. *Railroad Com'rs*, 9 Sawy. 253; S. C. 18 Fed. Rep. 10; *The Daniel Ball*, 10 Wall. 557. The question in each case is one of fact, and must be determined by its own circumstances. The receiver is therefore instructed that in hauling wheat or other property from Corvallis, or other points on his road, that is *en route* for San Francisco, or other point beyond the limits of the state, he may make a rate therefor without reference to the act.