STERNBERGER v. CAPE FEAR & YADKIN VALLEY R. R. COMPANY.

Where freight shipped from a point in this State to another point in this State, is necessarily carried, in part, over railroads lying wholly or partly in an adjoining State, it is inter-State commerce, and therefore the freight charges in such case are beyond the jurisdiction of the Railroad Commission of South Carolina.

Before HUDSON, J., Marlboro, January, 1888.

This was an appeal from a judgment of the Circuit Judge (overruling the Railroad Commission), which judgment held that freight charges from Charleston, S. C., to Tatum, S. C., through a portion of North Carolina, although in excess of the charges from Charleston to Bennettsville, a longer haul, could not be regulated by the Railroad Commission, (1) because steamboat transportation from Gardner's Bluff, six miles from Bennettsville, made Bennettsville a competitive point; and (2) because it was inter-State commerce.    Plaintiff appealed.

*Mr. Earle*, attorney general, for appellant, cited (upon the point considered by this court) 9 *Wheat.*, 12; 121 *U. S.*, 247; 10 *Wall.*, 564; 92 *U. S.*, 691; 102 *Id.*, 697; 91 *Id.*, 275; 114 *Id.*, 197; *Interstate Commerce Act*, § 1; 107 *U. S.*, 679; 102 *Id.*, 698; 2 *Pet.*, 245; 95 *U. S.*, 459; 12 *How.*, 299; 21 *Wall.*, 558; 3 *Id.*, 713.

*Mr. Knox Livingston*, contra.

October 30, 1888.    The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.    The plaintiff, appellant, who lives at Tatum, Marlboro County, had consigned to him from Charleston, S. C., a ton of commercial fertilizers.    The railroad

route from Charleston to Tatum, over which this fertilizer was transported, was first over the Northeastern Railroad and the Cheraw & Darlington Railroad to Cheraw, both roads being entirely in South Carolina. Thence from Cheraw over the Cheraw & Salisbury Railroad to Wadesboro, in North Carolina, this road being partly in this State and terminating in North Carolina at Wadesboro. Thence over the Carolina Central Railroad, being entirely in North Carolina, to Shoe Heel, in North Carolina. Thence over the Cape Fear & Yadkin Valley Railroad, principally in North Carolina, to Tatum, in South Carolina, which point is about 6 miles from Bennettsville, S. C., where the railroad terminates. The freight charged to plaintiff on his ton of fertilizer to Tatum was $4.40, while the freight to Bennettsville, six miles farther on the same article was only $4.00.

Under these circumstances the plaintiff complained to the Railroad Commission that the defendant was violating section 1443 of General Statutes, which forbids common carriers to charge more freight on the same goods for transporting the same a shorter than a longer distance in one continuous carriage. This complaint was investigated by the Railroad Commission, the defendant resisting the complaint upon the grounds : First, that Bennettsville was a competitive terminal point, and therefore exempt from the provisions of section 1443, General Statutes, by the terms of the *proviso* to said section ; and second, that the Railroad State Commission had no jurisdiction of the matter, inasmuch as it involved inter-State commerce. These defences were overruled by the Railroad Commission, and the defendant was required to correct its rates and to refund the excessive charges.

From this judgment the defendant appealed to the Circuit Judge of the 4th Circuit, who, after full testimony upon the question whether Bennettsville was a competitive terminal point, sustained defendant's appeal upon both the grounds taken—holding that Bennettsville being a competitive terminal point, was exempt from the operation of section 1443, General Statutes, and also that the matter involved was inter-State commerce, and therefore beyond the jurisdiction of the State Railroad Commission. He consequently decreed and adjudged, that the judgment of the

Commission be reversed.   From this decree and judgment the plaintiff has appealed to this court, assigning error to the Circuit Judge in overruling the two grounds upon which the judgment of the Commission was based.   We will take up these grounds in the inverse order in which they were discussed by the Circuit Judge.

And first, did the Railroad Commission have jurisdiction ? Or did the matter involve and belong to inter-State commerce, thereby depriving the State Commission of jurisdiction ?   The word commerce is a term of broad signification.   It embraces considerably more than the mere bargain and sale of goods and merchandise and other property between individuals.   Yes, it includes all the instruments by which it may be conducted.   It embraces transportation by railroads, steamboats, ferries, &c., &c., and all common carriers.   It may be carried on between individuals in the same State, or over railroads lying in the same State.   It is then internal commerce, and is under the control of State legislation.   Or it may be conducted and engaged in between individuals living in different States, or transported over railroads lying in and running through different States.   It is then inter-State commerce, and its regulation belongs to Congress.

Now, here was a purchase by the plaintiff, a citizen of South Carolina, of a ton of commercial fertilizer from a citizen in Charleston, both of the same State.   Thus far, this transaction belonged to internal or domestic commerce, and would be subject to State control, if any.   But the plaintiff lived at Tatum, in Marlboro County, some distance from Charleston, and to reach him his fertilizer had to be transported by railroads to him, and, as it turns out, by railroads some entirely in South Carolina, some in North Carolina, and others partly in both.   Now, while it is admitted that our State Railroad Commission has jurisdiction over all railroads commencing and terminating in the State, and over all transportation between points within the State, yet it is equally true that it has no jurisdiction over transportation running from the State into another State, or from another State into this State, or running entirely in another State.   Transportation like that suggested in the two first classes mentioned would be inter-State commerce, while that in the last class would be

the domestic commerce of the State in which it might be conducted.

Apply these principles to the case in hand. It seems that only two of the railroads over which this ton of fertilizer was transported commence and terminate within the limits of the State (the Northeastern and the Cheraw & Darlington); and if the question here had originated out of the freights of these two roads only, one or both, then there could have been no doubt as to the jurisdiction of the Commission. But the Cheraw & Salisbury Road is partly in this State and partly in North Carolina, and the Carolina Central from Wadesboro to Shoe Heel is entirely in North Carolina, and then the Cape Fear & Yadkin Valley is partly in the two States. Our Commission has no right to adjudicate questions of freight on roads like these three last, for the simple reason that they are not South Carolina roads.

Suppose that the plaintiff had purchased this ton of fertilizer at Cheraw, and had then consigned it to himself at Wadesboro in North Carolina, could our Railroad Commission have regulated the freight on that transportation? We think not. Or, suppose he had purchased at Wadesboro, and shipped to Shoe Heel, certainly upon that transportation our Commission could have taken no jurisdiction, let the freight have been as exorbitant as possible. Neither would shipping from Shoe Heel to Tatum, the road running from North Carolina into our State, have given the Commission jurisdiction. See our own case of *Railroad Commissioners* v. *Railroad Company* (22 S. C., 220), where this court said: "Any regulation of freights for the transportation from Columbia, in this State, to points in the State of North Carolina, by the statutes of this State, is beyond the power of the State, because of its being an invasion of the power exclusively vested in Congress by the constitution of the United States." See also decision of Mr. Justice Field in the case of *Pacific Coast Steamship Company* v. *The Board of Railroad Commissioners* (18 Fed. Rep., 10), decided 17 Sept., 1883, District Court of California; *Lord* v. *Steamship Company*, 102 U. S., 541.

We think this ton of fertilizer in its transportation from Charleston to Tatum has practically taken the course indicated.

First, it reached Cheraw on South Carolina roads, then it was substantially shipped anew into North Carolina, halting at Wadesboro to be reshipped to Shoe Heel, and thence back into South Carolina to Tatum—the route being partly on roads over which the freight thereon would be subject to the supervision of the Commission, if the charges complained of had been made there, and partly on roads over which the Commission has no jurisdiction, the charges complained of arising on settlement with one of these last roads. The judgment of the Circuit Judge is sustained upon the ground that the Railroad Commission was without jurisdiction.

Having reached the conclusion above, it is needless to discuss or adjudicate the other question as to whether Bennettsville is a competitive terminal point, in the sense of the proviso to section 1443, and therefore exempt from said section. In fact, if the Commission had no jurisdiction, the case was not properly before that Commission, and the question suggested could neither have arisen before it nor have been legally considered by it. We do not regard said question as before us; we therefore pronounce no judgment thereon.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed, upon the ground hereinabove.