6991

HUNTER v. CHARLESTON & WESTERN CAROLINA RY. CO.

CARRIER—FREIGHT—PENALTY.—A shipment from a point within this State through a portion of the State of Georgia to a point within this State is an interstate shipment, and the statute (24 Stat., 671) providing a penalty for delay in transportation of freight does not apply to such shipment.

Before PURDY, J., Spartanburg, September, 1907. Affirmed.

Action by S. S. Hunter against Charleston and Western Carolina Railway Company. From judgment on Circuit, affirming judgment of Magistrate J. R. Coan, plaintiff appeals.

*Messrs. Johnson & Nash,* for appellant, cite: *Is this interstate commerce?* 145 U. S., 192; 169 U. S., 137; 94 U. S., 135; 9 Sawy., 253. *If this was an interstate shipment, does this act in question burden it?* 73 S. C., 73; 169 U. S., 137; 75 S. C., 283; 69 S. C., 477; 22 S. C., 236. *What does "for transportation within this State" mean?* 24 Stat., 671; 32 Mo. App., 189; 30 Ency., 895.

*Mr. S. J. Simpson,* contra, cites: *This is an interstate shipment:* 29 S. C., 510; 187 U. S., 333; 17 Ency., 62, 63; 2 Hutch. on Carriers, sec. 525. *The statute in question burdens or regulates interstate commerce, and is thus void:* 118 U. S., 244; 17 Enc., 42. *The act applies to shipments which are all the time within the State:* 26 S. C., 353.

August 4, 1908.    The opinion of the Court was delivered by

MR. JUSTICE JONES. This action was commenced before Magistrate J. R. Coan, in Spartanburg county, to recover penalty under the act of 1904 for delay in the transportation of freight.    24 Stat., 671.

The defendant is a domestic railroad corporation, with *termini* in this State.    On March 9, 1907, the Ashepoo Fertilizer Company shipped to plaintiff, as consignee and owner of the bill of lading, a carload of fertilizers.    The freight was received in Charleston, S. C., by the Atlantic Coast Line Railroad, consigned to plaintiff at Pauline, S. C., to whom bill of lading was issued.    "Prompt shipment required" was printed on the bill of lading.    The Atlantic Coast Line delivered the freight to defendant company at Yemassee, in this State, on March 12th, and defendant had

the car in its possession until March 18, 1907, when it delivered same at Roebuck, S. C., to Glenn Springs Railway, on whose line is situated Pauline, the point of destination. The distance from Charleston, S. C., to Pauline, S. C., is between two and three hundred miles. Between Yemassee, S. C., and Roebuck, S. C., defendant operates without impediment or break through cars, but the line extends into the State of Georgia, via Augusta, for about twenty-one miles, and the car of fertilizers necessarily came over this line. Augusta, Ga., is the largest city on defendant's line, has the largest freight yard and handles more freight than any other point.

On trains from Yemassee to Roebuck the engine and the train crew are changed at Augusta, but cars and freight are not changed, and were not changed in this particular instance. In explanation of the delay, defendant gave evidence of a sympathetic strike of railroad employees, shop and yard men, at Augusta, Ga., during the whole month of February, 1907, which, among other things, prevented prompt repair of defendant's engines, all of which did not get back into service until ten or twelve days after the first of March, and that there was an unusual congestion of the road, due to very large shipments of coal running through the fertilizer season.

The magistrate gave judgment for the defendant, holding that the shipment or transportation was interstate and that it would render the act of 1904 unconstitutional, as violative of interstate commerce, to construe it so as to apply to such a shipment; that the proper construction of the act was to make it apply to "transportation within the State," according to its terms. On appeal to the Circuit Court the judgment of the magistrate was affirmed by Judge Purdy under the authority of *Sternberger* v. *R. R. Co.,* 29 S. C., 510, 7 S. E., 836, 2 L. R. A!, 105, and *Handley* v. *Kansas City R. Co.,* 187 U. S., 617. Plaintiff renews the contest by excep-

tions to this Court, but we must affirm the judgment upon the authorities stated.

In *Sternberger* v. *Ry., supra,* the freight was shipped from Charletson, S. C., to Tatum, S. C., first over the Northeastern R. R. and the Cheraw and Darlington R. R. to Cheraw, S. C., both roads being entirely in South Carolina; thence from Cheraw over the Cheraw and Salisbury R. R. to Wadesboro, N. C.; this road being partly in this State and terminating at Wadesboro, N. C.; thence over the Carolina Central Ry., being entirely in North Carolina, to Shoe Heel, in North Carolina; thence over the Cape Fear and Yadkin Valley Ry., principally in North Carolina, to Tatum, in South Carolina. Our Court held that this was interstate commerce, and, therefore, the railroad commission of South Carolina had no jurisdiction to regulate the freight charges in such case.

In *Handley* v. *Kansas City, etc., R. R., supra,* the transportation was continuous between Fort Worth and Grannis, in the State of Arkansas, but the route was fifty-two miles in Arkansas and extended via Spiro, sixty-four miles in Indian Territory. The Supreme Court of the United States held this to be interstate commerce and beyond the power of the railroad commission of Arkansas to fix rates therefor. The Court held that "to bring the transportation within the control of the State, as a part of its domestic commerce, the subject transported must be within the entire voyage under the exclusive jurisdiction of the State." The Court, referring to the case of *Lehigh Valley R. R. Co.* v. *Penn.,* 145 U. S., 192, said: "That was the case of a tax and was distinguished expressly from an attempt by a State directly to regulate the transportation while outside its borders. And, although it was intimated that, for the purposes before the Court, to some extent commerce by transportation might have its character fixed by the relation between the two ends of the transit, the intimation was carefully confined to those purposes. Moreover, the tax was determined in respect of

receipts for the proportion of the transportation within the State."

The object of the act in question was to prevent delays in transportation. Transportation is a part of commerce, and it must be held that the transportation in this instance was not wholly within the State, but was in part within the State of Georgia, and was, therefore, interstate transportation. Whatever might be the result, if the delay had actually occurred on that part of the line within this State, since it appears that the delay in this case actually occurred in another State, there is no escape from holding that if the penalty statute be construed to cover such a case, it violates interstate commerce.

Such is not the proper construction of the statute. The title is: "An act to prevent delays in the transportation of freight by railroads in this State." Section 1 provides: "That from and after May 1, 1904, all railroad companies doing business in this State shall transport to its destination all freight received by them for transportation within the State, etc."

Construing the words "transportation within the State," according to their exact and natural meaning, they do not embrace interstate transportation. *W. U. Tel. Co.* v. *Fremont,* 26 L. R. A., 698; *State* v. *Pullman Palace Car,* 64 Wis., 89, 23 N. W., 871; 8 Words & Phrases, 7503-4. The statute, therefore, cannot have operation beyond the territory of the State, and should not be so construed as to interfere substantially with transportation in its interstate feature.

Possibly in case of a transportation beginning and ending in this State, but the necessary route going partly in another State, it would not materially interfere with interstate transportation or commerce to penalize for delay occurring wholly within this State; but such is not the case at bar, and we reserve opinion on that point.

The judgment of the Circuit Court is affirmed.