8254

TRAYNHAM v. CHARLESTON AND WESTERN CAROLINA RY. CO.

INTERSTATE COMMERCE—CARRIER—FREIGHT—PENALTY.—The act, 25 Stats., 490, providing a penalty of five dollars per day for each day's delay, after a limited time, in transporting freight is a burden on interstate commerce when applied to delay in this State of a shipment from a point in this State to another point therein, through a small part of another State.

Before C. C. FEATHERSTONE, Special Judge, Laurens, April term, 1910. Reversed.

Action by Z. R. Traynham against the Charleston and Western Carolina Ry. Co.  Defendant appeals.

*Messrs. Simpson, Cooper & Rabb* and *F. B. Grier,* for appellant.

*Messrs. Simpson, Cooper & Rabb* cite: *This is an inter-state shipment:* 81 S. C. 169.

*Mr. Grier* cites: *The act should be construed to apply to transportation within the State:* 9 Wheat. 189; 95 U. S. 469; 202 U. S. 543; 22 S. C. 236; 81 S. C. 69; 17 L. R. A. 643.  *Character of the shipment:* 29 S. C. 510; 187 U. S. 621; 3 L. R. A. 238; 204 U. S. 404; 81 S. C. 169.  *The act cannot be applied to an interstate shipment:* 145 U. S. 621; 118 U. S. 557; 169 U. S. 133.

*Messrs. Richey & Richey,* contra, cite: *In the Fraser case,* 81 S. C. 162, *and in the Hunter case,* 81 S. C. 169, *the Court intimates if delay had occurred in this State the act would apply.  If sections 1710 and 2176, of Code of 1902, apply to interstate shipments, then this statute should:* 75 S. C. 276.

This case was argued at the June term, 1911, and ordered reargued in the *Court en Banc* at the November term, 1911.

July 13, 1912.  The opinion of the Court was delivered by

MR. CHIEF JUSTICE GARY.  This is an action for the recovery of a statutory penalty, and for damages alleged to have been sustained by the plaintiff, in consequence of an unreasonable delay on the part of the defendant, in transporting certain articles of merchandise.

The allegations of the complaint, material to the consideration of the questions involved, are as follows:

"That heretofore, to wit: on the 4th day of March, 1907, the Ashepoe Fertilizer Company delivered to the Atlantic

Coast Line Railroad Company, at Charleston, S. C., ten tons of guano, consigned to Z. R. Traynham, at Barksdale, in Laurens county, and State aforesaid.

"That at Yemassee, in the State aforesaid, on March 5, 1907, the Atlantic Coast Line Railroad Company, delivered the car containing said guano to the defendant, the Charleston and Western Carolina Ry. Co., for transportation to the plaintiff at Barksdale, S. C.

"That the distance between Yemassee and Barksdale, both of which are in the State of South Carolina, is not over two hundred miles, by the nearest railroad route.

"That although the said car of guano was received by the defendant on March 5, 1907, and the defendant was requested to make prompt shipment thereof, the said car of guano was not delivered to the plaintiff until the 6th day of April, 1907.

"That by and under the statute law of South Carolina, all common carriers doing business in this State are required to transport to its destination, all freight received by them for transportation, not exceeding the following limit, * * * and for failure to comply with the said statute, such common carrier so failing, shall be subject to a penalty of five dollars per day, for every day of delay, in excess of the time hereinabove limited."

The defendant denied that the delivery of the guano at its destination was unreasonably delayed, and alleged that the delay was caused by an unusually heavy movement of freight, at that time, over the line of the defendant, which caused its yards and tracks to be blocked at the transfer points, and made it impossible to reach the car and move it at an earlier date.

The defendant also alleged, that the shipment was subject to the laws relating to interstate commerce, and not to State legislation, by reason of the fact, that the defendant's line of railway, over which the guano was being transported, lies

partly in the State of South Carolina and partly in the State of Georgia.

The jury rendered a verdict in favor of the plaintiff for sixty dollars, and the defendant appealed.

The testimony shows, that the shipment began and terminated at its destination in this State; that a part of defendant's line, over which it was necessary for it to transport the goods, lies within the State of Georgia.

The first question that will be considered is, whether it was an interstate or an intrastate shipment.

The cases of *Sternberger* v. *Ry.*, 29 S. C. 510, 7 S. E. 836, 2 L. R. A. 105; *State* v. *Holleyman*, 55 S. C. 207, 31 S. E. 362, 45 L. R. A. 567; *Frasier & Co.* v. *Ry.*, 81 S. C. 162, 62 S. E. 14; *Hunter* v. *Ry.*, 81 S. C. 169, 62 S. E. 13, and *Hanley* v. *Kansas City Ry.*, 187 U. S. 617, determine, beyond question, that it was an interstate shipment. In the case of *Hunter* v. *Ry.*, 81 S. C. 169, 62 S. E. 13, the same railroad company was involved and the facts, in every respect, were similar to those now under consideration, except in that case, the delay occurred in the State of Georgia.

The title of the act then and now before us for interpretation is: "An act to prevent delays, in the transportation of freight, by railroads in this State." The first section provides: "That from and after May 1, 1904, all railroad companies doing business in this State, shall transport to its destination, all freight received by them for transportation, within the State, * * * ."

In that case the Court used this language: "Construing the words 'transportation within the State,' according to their exact and natural meaning, they do not embrace interstate transportation. (Citing authorities.) The statute, therefore, cannot have operation beyond the territory of the State and should not be so construed, as to interfere substantially with transportation in its interstate feature. * * * Transportation is a part of commerce and it must be held

that the transportation in this instance, was not wholly within the State, but was in part within the State of Georgia, and was, therefore, interstate transportation."

If no other language had been used by the Court in that case, it would be unnecessary to cite authorities to show, that the statute of this State is inapplicable. But the Court left open the question, whether a case is embraced within the terms of the statute, when the delay takes place wholly in this State.

In *Hanley* v. *Kansas City R.,* 187 U. S. 617, the Court quotes with approval the following language from *Pacific Coast S. S. Co.* v. *R. R. Commissioners,* 9 Sawy. 253: "To bring the transportation within the control of the State, as part of its domestic commerce, the subject transported must be within the entire voyage under the exclusive jurisdiction of the State."

An interstate transportation is continuous in its nature, and if a State statute, could have the effect of breaking the continuity of transportation, it would necessarily interfere with interstate commerce. *State* v. *Holleyman,* 55 S. C. 207, 31 S. E. 362.

As an interstate transportation must be regarded as an entirety, it is difficult to conceive how a delay may take place within a State, without being affected by causes operating at some other place on the line of railroad, even in another State.

It would certainly be an onerous burden on interstate commerce, to hold that a shipment during its actual transportation, could be subjected to State legislation at any point on the line whatever, before it reached its destination.

It is the judgment of this Court that the judgment of the Circuit Court be reversed.

MR. JUSTICE WATTS *and* CIRCUIT JUDGES ERNEST GARY, GEO. E. PRINCE, ROBT. E. COPES, T. H. SPAIN, FRANK B. GARY *and* S. W. G. SHIPP *concur.*

Mr. Justice Hydrick, *dissenting.* Lest others may be unjustly criticised for my shortcoming, I want to say that I am solely responsible for the delay in the filing of the decision of the Court in this case. The opinion of the Chief Justice was prepared before the case was heard by the *Court en Banc.* The opinion of Mr. Justice Fraser was prepared and sent to me within a few weeks thereafter. Since then the papers have been in my hands. Circumstances beyond my control have prevented the preparation of this opinion at an earlier date. I venture to think, however, that the importance of the question involved to the people of this State justifies the taking of all the time that was necessary for its thorough consideration.

The action was brought to recover the penalty of five dollars a day, which the statute of this State (25 Stats., 490) allows consignees, who are injured by the delay, to recover of carriers for every day of unreasonable delay in the transportation of freight within this State. The defendant received the shipment March 5th, but failed to carry it to destination till April 6, 1907, a delay of more than thirty days, notwithstanding the distance between the points of shipment and destination is not over two hundred miles. Notwithstanding both points are within this State, defendant's road runs for a distance of some twenty miles outside the State and through the city of Augusta, Ga. This circumstance affords the defense chiefly relied upon, to wit: that the shipment was interstate, and, therefore, the State statute does not apply; and, if it does, that it is void, because it is an unlawful interference with and burden upon interstate commerce.

The Court instructed the jury as follows: "If the jury find that the car was delayed in South Carolina by reason of conditions existing on the road of defendant in the State of Georgia, then you must find for the defendant. If the jury find that the delay in the shipment occurred wholly within this State, then I charge you that the plaintiff is

entitled to recover five dollars per day for every day the car was delayed in this State, less the time allowed by the statute, Sundays excluded, provided you find that the delay was not brought about by good and sufficient cause. If you find that the delay was brought about by good and sufficient cause, you must find for the defendant, or if you find that the delay occurred in the State of Georgia, you must find for the defendant." Under these instructions the verdict of the jury settles the question of fact in plaintiff's favor that the shipment was unreasonably delayed while it was within this State, and that the delay was due to conditions existing wholly within this State. The questions raised by the exceptions, other than the validity of the statute, as applied to the shipment in question, do not require discussion.

The title of the act is: "An act to prevent delays in the transportation of freight in this State." What kind of delays did the legislature have in mind? The language of the title answers, "delays in the transportation of freight." Occurring where? Answer, "within this State." It is clear, therefore, that the legislature realized and had in mind the limitations upon its power, and knowing that it could not penalize delays occurring beyond the borders of the State, did not attempt to do so; but, by the language used, made it clear that its intention was to penalize only such delays as occurred within its jurisdiction. This intention is shown also by a consideration of the act as a whole and especially by the language of the first part of the first section, which reads: "That * * * every common carrier doing business in this State shall transport to its destination all freight received by them for transportation within this State within a reasonable time after receipt thereof, not exceeding the following times, after midnight of the day of the receipt thereof, to wit: Between points not over one hundred miles apart, seventy-two hours; between points over one hundred and not over two hundred miles apart, ninety-six hours;

4—92

and between points over two hundred miles apart, one hundred and twenty hours." To limit the meaning of the words "within this State," here used solely to a modification of the word "transportation," so as to make the language mean that the physical act of transporting must be wholly within the State, is a construction so narrow and technical as to do violence not only to the legislative intent, but also to the legislative intelligence. The Court knows, and must assume that the legislature knew, that some of the railroad companies doing business in this State, and especially the larger systems, transport great quantities of freight from point to point within the State by carrying it over lines which run in part beyond the borders of the State. The language used, construed in the light of this fact, plainly shows the intent that the act should apply to all shipments from one point in the State to another point in the State, without regard to whether the actual physical movement was wholly within the State at every stage thereof or not.

In the first place, it will be conceded that the shipment in question is interstate. This Court has expressly decided that point. *Hunter* v. *Ry.,* 81 S. C. 173, 62 S. E. 13. But it does not follow by any means that, because it is an interstate shipment, the carrier cannot be penalized under the State law for delay in the transportation of such a shipment, occurring wholly within the State. It seems to me that the fundamental error into which some of my learned brethren have fallen is that, because the shipment is interstate it necessarily follows that the carrier is not subject to the State law with regard to the transportation of it. The power of the States to compel, by proper legislation, interstate carriers and others engaged in interstate commerce to discharge their duties to the public, either those imposed by the common law or by statutes reasonably exerting the police power of the State, has been affirmed so often by the Supreme Court of the United States, whose decisions upon that question are final and controlling, that it can no longer

be questioned. That great Court has never denied the power of the States, in the absence of any regulation by Congress, to enact such laws when they are only a reasonable exercise of the police power of the States and do not burden or interfere with interstate commerce, although they may incidentally affect it. I shall, therefore, rely chiefly upon the decisions of that Court to sustain the application of the statute of this State to the shipment in question.

Celerity in the movement of freight is of the utmost importance in the promotion of commerce. The statute in question, so far from hindering or burdening commerce, is actually an aid to it by stimulating the carriers to the exercise of proper diligence in the transportation of freight. "A State statute imposing a penalty on railroad companies for the detention of freight more than a limited time after it is received for shipment, without the consent of the shipper, is not void as a regulation of interstate commerce even as applied to freight to be shipped to another State, since the enforcement of such statute would expedite and not obstruct interstate traffic." 17 A. & E. Enc. L. 2 ed. 103.

In *Sherlock* v. *Ailing,* 93 U. S. 99, 23 L. ed. 819, Mr. Justice Field, speaking for the Court, said: "It may be said generally, that the legislation of a State, not directed against commerce or any of its regulations, but relating to the rights, duties and liabilities of citizens, and only indirectly and remotely affecting the operations of commerce, is of obligatory force upon citizens within its territorial jurisdiction, whether on land or water, or engaged in commerce, foreign or interstate, or in any other pursuit."

In *Western Union Tel. Co.* v. *James,* 162 U. S. 650, 40 L. ed. 1105, a statute of the State of Georgia, imposing a penalty on telegraph companies for failure to transmit and deliver telegrams "with impartiality and good faith and with due diligence," was sustained and enforced in its application to an interstate telegram. The statute was assailed

upon the same ground as the statute here in question, to wit, that it infringed upon the power vested in Congress by the Constitution "to regulate commerce with foreign nations and among the several States." The Court held that telegraphic messages from one State to another constitute a part of interstate commerce, and come within the protection of the commerce clause of the Constitution; that if the statute could be construed as regulating commerce between the States, it was void; that enactments which may incidentally affect interstate commerce and the persons engaged in it, do not necessarily constitute regulations of that commerce within the meaning of the Constitution; that "legislation which is a mere aid to commerce may be enacted by a State, although at the same time it may incidentally affect commerce;" that a provision for the delivery of telegraphic messages at a station within the State need have no effect upon the conduct of the telegraph company with regard to the performance of its duties outside the State; that obedience to the statute would not unfavorably affect the company or embarrass it in the course of its business, and, hence, in the absence of any regulation by Congress, the statute was valid. As observed by the Court in that case, the statute undertook to do nothing more than compel the telegraph company to perform its duty. The Court said: "The statute in question is of a nature that is in aid of the performance of a duty of the company that would exist in the absence of any such statute, and it is in nowise obstructive of its duty as a telegraph company. It imposes a penalty for the purpose of enforcing this general duty of the company. The direction that the delivery of the message shall be made with impartiality and in good faith and with due diligence is not an addition to the duty which it would owe in the absence of such a statute. Can it be said that the imposition of a penalty for the violation of a duty which the company owed by the general law of the land is a regulation of or an obstruction to interstate commerce within

the meaning of that clause of the Federal Constitution under discussion? We think not. No tax is laid upon any interstate message, nor is there any regulation of a nature calculated to at all embarrass, obstruct, or impede the company in the full and fair performance of its duty as an interstate sender of messages. We see no reason to fear any weakening of the protection of the constitutional provision as to commerce among the several States by holding that, in regard to such a message as the one in question, although it comes from a place without the State, it is yet under the jurisdiction of the State where it is to be delivered (after its arrival therein at the place of delivery), at least so far as legislation of the State tends to enforce the performance of the duty owed by the company under the general law. So long as Congress is silent upon the subject, we think it is within the power of the State government to enact legislation of the nature of this Georgia statute. It is not a case where the silence of Congress is equivalent to an express enactment." Again, the Court said: "While it is vitally important that commerce between the States should be unembarrassed by vexatious State regulations regarding it, yet on the other hand there are many occasions where the police power of the State can be properly exercised to insure a faithful and prompt performance of duty within the limits of the State upon the part of those who are engaged in interstate commerce. We think the statute in question is one of that class, and in the absence of any legislation by Congress the statute is a valid exercise of the power of the State over the subject."

That case cannot be distinguished in principle from this; for unquestionably it is the duty of carriers, under the general law, to transport freight to its destination within a reasonable time after receipt of it. The statute we are now considering imposes no new duty. It only penalizes the failure to perform the duty imposed by the general law, and implied as an element of the contract of carriage.

While it fixes the limits of time within which shipments shall be carried from place to place within given distances, it, in effect, if not in terms, declares the times so fixed to be reasonable, and it even goes further and allows the carrier to relieve itself from the liability incurred by failing to comply with its provisions by proving that such failure was due to good and sufficient cause. But it was expressly decided in *Western Union Tel. Co.* v. *Commercial Milling Co.,* 218 U. S. 406, 54 L. ed. 1088, that "a regulation of interstate commerce which would be valid if rested upon the common law of the State is no less valid because made by a State statute." (Syllabus.) In that case a statute of Michigan, which made telegraph companies liable in damages for mistakes, errors or delays caused by negligence in the transmission or delivery, or for the nondelivery of any repeated or unrepeated message, was sustained, notwithstanding it was applied in a case where the message was sent from the State of Michigan into the State of Missouri, and the negligence by which it was lost occurred in the State of Illinois.

In *Chicago etc. R. Co.* v. *Solan,* 169 U. S. 133, 42 L. ed. 688, the validity of a statute of Iowa, prohibiting railroad companies from limiting their liability as common carriers, was affirmed and applied, though the plaintiff was injured while on an interstate train and making an interstate journey. The Court said: "Railroad corporations, like all other persons and corporations doing business within the territorial jurisdiction of a State, are subject to its law. It is in the law of the State that provisions are to be found concerning the rights and duties of common carriers of persons or of goods, and the measures by which injuries resulting from their failure to perform their obligations may be prevented or redressed. Persons traveling on interstate trains are as much entitled, while within a State, to the protection of that State as those who travel on domestic trains. A carrier exercising his calling within a particular State, although engaged in the business of inter-

state commerce, is answerable, according to the law of the State, for acts of nonfeasance or of misfeasance committed within its limits. If he fails to deliver goods to the proper consignee at the right time and place, or if by negligence in transportation he inflicts injury upon the person of a passenger brought from another State, the right of action for the consequent damage is given by the local law. It is equally within the power of the State to prescribe the safeguards and precautions foreseen to be necessary and proper to prevent by anticipation those wrongs and injuries, which, after they have been inflicted, the State has the power to redress and to punish. The rules prescribed for the construction of railroads, and for their management and operation, designed to protect persons and property otherwise endangered by their use, are strictly within the scope of the local law. They are not, in themselves, regulations of interstate commerce, although they control, in some degree, the conduct and the liability of those engaged in such commerce. So long as Congress has not legislated upon the particular subject, they are rather to be regarded as legislation in aid of such commerce, and as a rightful exercise of the police power of the State to regulate the relative rights and duties of all persons and corporations within its limits."

The last decision by the Supreme Court of the United States upon this subject is *Western Union Tel. Co.* v. *Crovo,* 220 U. S. 364, 55 L. ed. 498, and it is directly in point. A statute of the State of Virginia made it the duty of telegraph companies doing business in the State to receive and transmit dispatches faithfully, impartially and with substantial accuracy, as promptly as practicable, and in the order of delivery to the company, with the privilege of giving preference to certain classes of messages, and imposed a penalty of one hundred dollars for failure to comply with its provisions. Crovo delivered a message to be sent from Richmond, Va., to Brockton, N. Y. He sued for and recov-

ered the penalty for the negligent failure to promptly transmit the message, alleging that the negligence occurred within the State, to wit, in the office at Richmond. The Court, per Mr. Justice Lurton, states the question to be decided as follows: "The only question for decision is whether a statute of the State of Virginia which imposes a penalty for the failure to transmit a dispatch received at an office of the company in the State, for transmission to a person in another State, is a valid exercise of the power of the State, the delay occurring in the State." The answer to that question is given by the Court in the following language: "The requirement of the Virginia statute as here applied is a valid exercise of the power of the State, in the absence of legislation by Congress. It is neither a regulation of, nor a hindrance to, interstate commerce, but is in aid of that commerce. The case is clearly governed by *Western U. Tel. Co.* v. *James* and *Western U. Tel. Co.* v. *Commercial Milling Co.*, both above cited." Upon what principle can that case be distinguished from this? In *Bagg* v. *Wilmington etc. R. Co.* (N. C.), 14 L. R. A. 596, the Supreme Court of North Carolina held that "a State statute compelling the shipment of freight within a certain time after receiving it, under a penalty for default, is not an unconstitutional regulation of interstate commerce, as to freight for shipment out of the State, as it tends not to trammel or obstruct, but to expedite such commerce." (Syllabus.) That case is also directly in point. The statute imposed a penalty of twenty-five dollars a day for every day over five that any railroad allowed freight received by it for shipment to remain unshipped. The Court held the statute valid as a proper exercise of the power of the State, as applied in a case where the shipment was from a point in North Carolina to a point in South Carolina. A like principle was involved and decided by this Court and sustained by the Supreme Court of the United States in *A. C. L. R. Co.* v. *Mazursky*, 216 U. S. 121, 54 L. ed. 411, where the

validity of the statute of this State imposing a penalty of fifty dollars on common carriers for failure to adjust and pay, within the times therein specified, claims for loss of or damage to freight while in the possession of such carriers, was affirmed, though it was applied to interstate shipments. To the same effect is the case of *Skipper* v. *Ry.,* 75 S. C. 276, sustaining section 1710, volume I, Code 1902, as applied to interstate shipments, and the principle there decided has been affirmed by the Supreme Court of the United States. *Richmond etc. R. Co.* v. *R. A. Patterson Tob. Co.,* 169 U. S. 309, 42 L. ed. 759.

Under the reasoning and authority of the cases hereinbefore cited, I conclude that the statute under consideration is not an unlawful interference with or burden upon interstate commerce, when applied to delays occurring wholly within the State; and that it was intended to be applied only in cases of delay occurring within the State.

Therefore, I think the judgment of the Circuit Court should be affirmed.

MESSRS. CIRCUIT JUDGES H. F. RICE *and* T. S. SEASE *concur.*

MR. JUSTICE FRASER, *dissenting.* I feel bound to file a dissent to the opinion of the majority of the *Court en Banc* in this case on account of the exceeding great importance of the questions involved.

Railroads are *quasi* public highways. It is the State's business to maintain highways, and when the State allows its business to be conducted by private persons or corporations, it ought not to lose its power to control the management of them. If the Federal Supreme Court shall limit the power of this State to control its own affairs, it will be time enough to concede the loss. If this Court surrenders the State's rights the State is helpless. If this Court erroneously upholds the State's power to control the highways within

its borders, there is a right of appeal to the Supreme Court of the United States and the error can be corrected. The respondent here would have no standing with the Federal authorities. He concedes they have no jurisdiction. The power of this State to control commerce between its own citizens ought not to be surrendered.

In the view I take of this case, it is necessary to consider appellant's last exception. The appellant refers us to *Frasier & Co.* v. *Ry. Co.,* 81 S. C. 161, 62 S. E. 14. In that case it appears that the strike had been on for more than a month when appellant undertook to transport this carload of guano. It is true that in the absence of instructions, the transportation company has the right to fix the route, but in fixing the route it seems to me they are bound to fix a possible route and when they fix a route they know to be an impossible route, they are responsible for nondelivery in the specified time.

The statute allows the transportation company to change the route designated by the shipper when the designated route will be interrupted or incapable of being used at the time, by strike or casualty, preventing the running of its trains.

As to the interstate commerce feature of this case, I would say: Commerce is the interchange of commodities between the contracting parties. When the contracting parties are citizens of different States our scheme of government has placed the control in the Federal government, which is common to both. Where the contracting parties are citizens of the same State, the control is assigned to the State of which both are citizens. The line of division between these two ought to be clearly defined. The Federal government ought to be accorded cheerful obedience in its management of interstate commerce, but the State Courts ought to be jealous to guard the rights of the State to control intrastate commerce. Now is this *inter* or *intra* state commerce? Both of the contracting parties are residents of

this State. Both termini are situated in this State. It does not seem to me that the bare fact that in the course of transportation it passed for a short distance beyond the limits of the State can change the nature of the transaction.

It is said that transportation is a part of commerce. Manifestly this is true. Otherwise there would be little intrastate commerce and no interstate commerce. It seems to me that the contract of the parties and not the method of transportation fixes the nature of the commerce, and the jurisdiction of the Federal and State governments. It seems to me that the case of *State* v. *Holleyman,* 55 S. C., sustains this view where the method of transportation was the most primitive, but protected by the nature of the contract.

The fact that the State of South Carolina cannot punish an offense committed in Georgia, does not deprive the State of the power to punish for an offense committed in South Carolina.

*The Lehigh Valley Railroad Co.* v. *The Commonwealth of Pennsylvania,* 145 U. S. 192-205 : The tax under consideration here was determined in respect of receipts for the proportion of the transportation within the State, but the contention is that this could not be done because the transportation was an entire thing, and in its course passed through another State than that of the origin and destination of the particular freight and passengers. There was no breaking of bulk or transfer of passengers in New Jersey. The point of departure and the point of arrival were alike in Pennsylvania. The intercourse was between those points and not between any other points. Is such intercourse, consisting of continuous transportation between two points in the same State, made interstate because in its accomplishment some portion of another State may be traversed? Is the transmission of freight or messages between two places in the same State made interstate business by the deviation of the railroad or telegraph line on to the soil of another

State? * * * It should be remembered that the question does not arise as to the power of any other State than the State of the termini, nor as to taxation upon the property of the company situated elsewhere than in Pennsylvania, nor as to the regulation by Pennsylvania of the operations of this or any other company elsewhere, but it is simply whether, in the carriage of freight and passengers between two points in one State, the mere passage over the soil of another State renders that business foreign, which is domestic. We do not think such a view can be reasonably entertained, and are of opinion that this taxation is not open to constitutional objection by reason of the particular way in which Pennsylvania was reached from Mauch Chunk."

I do not see that the Lehigh Valley case is overruled by any of the cases cited. In these cases there was an effort to fix charges for transportation and to punish for offenses committed outside of the States whose laws were invoked. Of course they failed. The State cannot control transportations outside of their territorial limits. The question in each case was the jurisdiction of the several arms of the State government and the Courts held that these arms could not reach so far. It is true in the case of *Frasier & Co.* v. *The Railway,* the Court does call it interstate business, but when the Court said, "there was no evidence that the delay occurred in this State," it was without jurisdiction to render any judgment except to dismiss the proceedings. The same is true of the Hunter case.

In the Hawley case and the Sternberger case the question was the right of State railroad commissions to fix rates outside of the State, and it is conceded that they had none. The nature of the commerce was not involved, therefore, the name by which it was called is not binding.

In the case at bar the contracting parties were of this State, the *termini* in this State, and the delay for which judgment was given occurred in this State.

It is my opinion that the judgment of the Court below ought to be sustained.

CIRCUIT JUDGE GEO. W. GAGE, *dissenting.* Granting that the shipment was betwixt the States, the mixed issue made is this: does the requirement of the statute that the car of fertilizers should not be halted in this State except for "good and sufficient cause," constitute a burden upon or hindrance of the carriage of the fertilizers?

The testimony does not prove it as a fact; and no just inference shows it as the law.

In my judgment the statute is a valid exercise of the State's power now; and the result below was right and ought to be affirmed.

MR. JUSTICE WOODS *did not sit in this case.*